PEOPLE ex rel. M. WINEBURGH ADVERTISING CO. v. MURPHY.

(Supreme Court, Appellate Division, First Department. December 18, 1908.)

1. EMINENT DOMAIN (§ 2*) — COMPENSATION — "TAKING OF PROPERTY" — WHAT CONSTITUTES.

A law which deprives the owner of the beneficial use and free enjoyment of property, or restrains its use and enjoyment so as to materially affect its value, takes his property without compensation, within the meaning of the Constitution.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 3; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 8, pp. 6852–6863, 7813.]

2. CONSTITUTIONAL LAW (§ 81*)—POLICE POWER—SCOPE.

The police power of the state must be exercised subject to the provisions of the state and federal Constitutions, and laws enacted thereunder must clearly tend to preserve the public safety, health, morals, or welfare, and must affect the interests of the public generally, as distinguished from those of a particular class, and the means used must be reasonably necessary to the accomplishment of the purposes and not unduly oppressive.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

3. CONSTITUTIONAL LAW (§ 81*)—POLICE POWER—LIBERTY TO FOLLOW OCCUPATION.

The Legislature cannot, in the exercise of its police power, arbitrarily infringe the liberty or property rights of individuals, or prevent them from following any profession or pursuit or making contracts with reference thereto, or impose unusual or unnecessary restrictions upon lawful occupations.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

4. CONSTITUTIONAL LAW (§ 70*) — POLICE POWER — POWER OF COURTS TO REVIEW ACT.

A legislative determination of what is a proper exercise of its police power may be reviewed by the courts, and in determining the validity of an act the court may consider what may be done under the act, as well as what was done in the particular case.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 129; Dec. Dig. § 70.*]

5. EMINENT DOMAIN (§ 2*) — COMPENSATION — "TAKING OF PROPERTY" — WHAT CONSTITUTES—"SKY SIGN."

Building Code of City of New York, § 144, provides that any sign or advertising device supported or attached over or above any building, etc., shall be deemed a "sky sign," and prohibits such signs from being constructed more than nine feet above the front wall of a building at any part. Relator seeks to erect a sky sign on a building to a greater height than permitted by an ordinance enacted pursuant to the building code, having leased the right to erect signs on the building, and respondent refused to issue a permit on the ground that its erection would violate the ordinance. *Held*, that the ordinance constituted a "taking of property" without compensation, in that it arbitrarily limited the erection of signs above the height stated, and it was not justified as a police regulation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 3; Dec. Dig. § 2.*]

Clarke and Houghton, JJ., dissenting.

Appeal from Special Term.

Application for mandamus by the People, on the relation of the M. Wineburgh Advertising Company against Edward S. Murphy, as Superintendent of Buildings, Borough of Manhattan, City of New York, to compel respondent to consider an application for a permit. From an order denying the writ, relator appealed. Order reversed, and motion for peremptory writ awarded.

Reversing order 60 Misc. Rep. 536, 113 N. Y. Supp. 854.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, SCOTT, and HOUGHTON, JJ.

Louis Marshall, for appellant.
Francis K. Pendleton, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. Appeal from an order denying a motion for a peremptory writ of mandamus. The relator is a domestic corporation engaged in the business of constructing and maintaining advertising signs, and displaying thereon advertisements of manufacturers, merchants, and others, for compensation. It desires to erect upon the top of a building in the city of New York a metal structure of the class known as "sky signs," and has applied to the respondent for a permit so to do. This permit the respondent has refused to issue, basing his refusal, not upon any defect or inadequacy in the plans for such structure, but upon the sole ground that the proposed structure would be illegal; its illegality consisting of the fact that, if constructed according to the proposed plans, it will extend more than nine feet above the front wall or cornice of the building to which it is to be attached. The respondent has therefore refused to examine or pass upon the proposed plans. The purpose of the present proceeding is to obtain a writ of mandamus to compel him to examine and pass upon them, and, if he finds them to be sufficient and adequate, to issue a permit therefor.

The ordinance upon which the respondent has based his refusal is embraced within section 144 of the building code of the city of New York, which, so far as pertinent, reads as follows:

"Any letter, word, model, sign, device or representation in the nature of an advertisement, announcement or direction, supported or attached wholly or in part over or above any wall, building or structure shall be deemed a 'sky sign.' Sky signs shall be constructed entirely of metal, including the uprights, supports and braces for the same, and shall not be at any point over nine feet above the front wall or cornice of the building or structure to which they are attached or by which they are supported."

Other provisions of the section require all fences, signs, bill boards, and sky signs to be erected wholly within the building line, and to be properly secured and braced, and further require that before any such be erected a permit be obtained therefor from the superintendent of buildings. No question is made by the appellant as to the right of the municipality, under proper legislative sanction, to regulate the erection of fences, bill boards, and signs, and to prescribe reasonable conditions and restrictions upon such erection, and to require that a permit be obtained from the proper authority. It is claimed, however, and that is the only point we propose to consider, that the ordinance in question is unconstitutional, in so far as it fixes an arbitrary height of nine feet above the front wall or cornice as the limit beyond which no sky sign can be erected, no matter how strongly it may be built and supported, or how far back it may be from the street line of the building upon which it is to be erected.

It is complained that this imposes such limitations upon the use of real property within the city of New York as to amount to the taking of private property without just compensation. It is quite clear that the ordinance constitutes a "taking" of the property. It imposes restraints and limitations upon the owner's power to use his property, and it is well settled that whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment that materially affect its value, it deprives him of his property, within the meaning of the Constitution.

Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543. Not only does the ordinance tend to deprive the owner of the free enjoyment of his property, but, in the present case at least, that deprivation will result in substantial loss; for the relator has contracted to pay the owner a yearly rental of $400 for the privilege of erecting and maintaining the projected sky sign. Since the ordinance provides for the payment of no compensation to the owner, it is clearly unconstitutional in the particulars above referred to, unless it can be justified, as the respondent attempts to justify it, as a valid exercise of the police power of the state. As was recently said by the Court of Appeals, the existence of the police power of the state is not to be denied, but its limitations are difficult of accurate demarcation. Wright v. Hart, 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N. S.) 338.

There are certain general and well-settled rules however which, if observed, will greatly aid in determining whether or not the police power of the state has been exceeded in any particular case:

"The power must be exercised subject to the provisions of both the federal and state Constitutions, and the laws passed in the exercise of such power must tend, in a degree that is perceptible and clear, toward the preservative of the public safety, or the lives, health, and morals of our inhabitants, or the welfare of the community. But the Legislature cannot arbitrarily infringe upon the liberty or property rights of any person living under the Constitution; nor prevent him from adopting and following any profession, trade, or industrial pursuit, not injurious to the community, that he may see fit; nor prevent him from making contracts with reference thereto. To justify the state in interposing its authority in behalf of the public, it must appear that the interests of the public generally, as distinguished from those of a particular class, require such interference, and that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. The legislative determination as to what is a proper exercise of the police power is subject to the supervision of the court, and in determining the validity of an act it is its duty to consider, not only what has been done under the law in a particular instance, but what may be done under and by virtue of its authority." Frank L. Fisher Co. v. Woods, 187 N. Y. 90, 79 N. E. 836, 12 L. R. A. (N. S.) 707.

This epitome of the rules surrounding and limiting the exercise of the police power finds support in a great number of cases in the courts of this and other states and of the United States. As we took occasion to say in City of New York v. Weinburgh Adv. Co., 122 App. Div. 748, 107 N. Y. Supp. 478:

"To justify an act or ordinance which in any degree interferes with the liberty of the individual, or with the full enjoyment by him of his property, it must appear by reasonable intendment that it is calculated, intended, convenient, and appropriate to conserve the public health, welfare, comfort, or morals; and, while it lies primarily within the discretion of the enacting body to determine what laws are appropriate and proper for that purpose, yet the duty remains in the courts, when called upon, to scrutinize the measures sought to be enforced, to see whether they really fall within the limitations of the police power. Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636."

In considering whether the ordinance now under discussion falls within these rules, it is pertinent to note two features of it which serve to distinguish it from the ordinances sustained in other cases in this state. In the first place, it is not directed against structures generally

placed upon the roofs of buildings, nor even against structures of a particular kind or constructed in a particular manner or of specified materials. The legality or illegality of a structure upon the roof of a building is not made dependent upon the nature of the structure itself, but upon the use to which it is to be put, so that a structure of precisely the size and character of that proposed to be erected by the relator would be perfectly lawful, but for the fact that it is proposed to display thereon "a letter, word, model, sign, device or representation in the nature of an advertisement." As was said by the Supreme Court of New Jersey, forbidding the erection in certain localities of signs and bill boards, but not fences, the very fact that the prohibition in the ordinance is not directed against the structure, but against its use for a particular purpose, suggests "that some consideration other than public safety led to its passage." City of Passaic v. Patterson Bill Board Adv. & Sign Painting Co., 72 N. J. Law, 285, 62 Atl. 267, 111 Am. St. Rep. 676.

The second notable feature of the ordinance is that it absolutely prohibits, under any consideration whatever, or subject to any conditions, the erection of a sky sign exceeding nine feet in height above the cornice or front wall. This is absolute prohibition, and not merely regulation, and markedly differentiates the ordinance now under consideration from those sustained in this state by the authorities on which the respondent mainly relies. City of Rochester v. West, 164 N. Y. 510, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659; Id., 29 App. Div. 125, 51 N. Y. Supp. 482; Gunning System v. City of Buffalo, 75 App. Div. 31, 77 N. Y. Supp. 987; Whitmier & Filbrick Co. v. City of Buffalo (C. C.) 118 Fed. 773. In the Rochester Case the ordinance upheld was not prohibitive of bill boards more than six feet in height. It permitted them, up to that height, to be erected without any permit at all, but provided that bill boards exceeding that height might not be erected "without the permission of the common council," and the ordinance prescribed the procedure to be followed in applying for such permission. The complaint against the defendant in that case was, not that he erected a bill board more than six feet high, but that he did so without having applied for and obtained the consent of the common council. In the two cases arising in the city of Buffalo, the ordinance did not prohibit the erection of bill boards over seven feet high, but prescribed that over that height they could only be erected with the permission of the common council. See report of the case in Gunning System v. City of Buffalo, 62 App. Div. 497, 71 N. Y. Supp. 155, where the ordinance is set forth in full. If the present ordinance had stopped with the provision that no sky sign should be erected unless plans therefor were submitted and approved and a permit issued, it would fall within the rule laid down in the foregoing cases. Its vice is that it fixes an arbitrary height, and absolutely forbids the erection of any sky sign exceeding that height. This is purely arbitrary, because no man can say that height alone determines the safety of the structure, or that a sky sign nine feet high will be safe, and one six inches higher must of necessity be unsafe, no matter how carefully and strongly built and braced.

The learned corporation counsel has been unable to refer us to a single case, in any jurisdiction, wherein so drastic and prohibitory an ordinance has been upheld. On the other hand, there are numerous decisions in other jurisdictions in which prohibitive ordinances and statutes have been condemned. City of Chicago v. Gunning System, 214 Ill. 628, 73 N. E. 1035, 70 L. R. A. 230; Commonwealth v. Boston Adv. Co., 188 Mass. 348, 74 N. E. 601, 69 L. R. A. 817, 108 Am. St. Rep. 494; Bill Posting Sign Co. v. Atlantic City, 71 N. J. Law, 72, 58 Atl. 342; Passaic v. Paterson Bill Posting, etc., Co., 72 N. J. Law, 285, 62 Atl. 267, 111 Am. St. Rep. 676; Crawford v. City of Topeka, 51 Kan. 756, 33 Pac. 476, 20 L. R. A. 692, 37 Am. St. Rep. 323; Western Co. v. Knickerbocker, 103 Cal. 111, 37 Pac. 192; Bryan v. City of Chester, 212 Pa. 259, 61 Atl. 894, 108 Am. St. Rep. 870.

We think, that upon reason and authority the ordinance relied upon by respondent, in so far as it arbitrarily and absolutely forbids the erection of any sky sign over nine feet in height above the front wall or cornice, cannot be upheld as a valid exercise of the police power; that its effect is to deprive the owner of real estate of the full and complete enjoyment of his property without compensation; and that it does not appear that the interest of the public generally requires such curtailment of the owner's property rights, nor is it perceptible and clear that the ordinance in the particulars referred to is calculated, intended, convenient, and appropriate to conserve the public health, welfare, comfort, or morals. It follows that the order appealed from must be reversed, and the motion granted, directing that a peremptory mandamus issue to the respondent, commanding him to examine the plan and application filed by the relator and described in its petition, with reference to the material to be used and the method of construction thereof, and as to the safety thereof, and, if he shall find that the said structure is to be built of proper materials and in a proper manner, and that the proposed structure is safe and secure, to approve said application and issue a permit thereon. Settle order on notice.

INGRAHAM and McLAUGHLIN, JJ., concur. CLARKE and HOUGHTON, JJ., dissent.

