MARGARET RACINE, as Administratrix of the Estate of LOUIS T. RACINE, Deceased, Respondent, *v.* THEODORE W. MORRIS et al., Doing Business under the Firm Name of THEODORE W. MORRIS & COMPANY, Appellants, Impleaded with Others.

Negligence — violation of statutory duty to guard elevator shafts — when occupant of building liable for death of policeman who fell down unguarded elevator shaft, while engaged in discharge of duty.

The legislature may by statute create a duty unknown to the common law, a violation of which statute will give a cause of action for damages to one to whom the duty was owing, and it may extend the common law duties of care in behalf of persons or a class of persons and originate duties for the protection and safety of those toward whom, under the common law, a duty of care did not exist.

When a patrolman of the police force of the city of New York discovered an outside door of a building partly open, it having been left in that condition by the occupants of the building at the close of the day's business, and on entering in the dark to discover the cause fell through an unguarded elevator well, which had also been left in that condition by the occupants, an action may be maintained against them for the resulting injury. (Building Code of the City of N. Y. § 95; New York City Charter [L. 1901, ch. 466], §§ 407, 761.)

*Racine* v. *Morris*, 136 App. Div. 467, affirmed.

(Argued January 17, 1911; decided March 21, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 23, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore W. Morris, Jr.*, for appellants. There can be no recovery at common law. (*Eckes* v. *Steller*, 98 App. Div. 76; *Casey* v. *Adams*, 137 Ill. App. 404; 234 Ill. 350; *Stanwood* v. *Clancy*, 75 Atl. Rep. 293; *Birch* v. *City of New York*, 190 N. Y. 397.) There can be no recovery under the Building Code. (*Koch* v. *Fox*, 71 App. Div. 288; *Moore* v. *Gadsden*, 93 N. Y. 12; *Knisley* v. *Pratt*, 148 N. Y. 372; *White* v. *Wittemann*, 131 N. Y. 631; *Marino* v. *Lehmaier*, 173 N. Y. 530; *McRickard* v. *Flint*, 114 N. Y. 222; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90; *Willy* v. *Mulledy*, 78 N. Y. 310; *Huda* v. *A. G. Co.*, 154 N. Y. 474; *Behler* v. *D. C. & Co.*, 19 R. I. 49.)

*Clarence J. Shearn* for respondent. There are many cases in which, there being no violation of a common law duty, a statutory duty has been imposed, and a violation of such duty, resulting in injury to persons for whose benefit the statute was intended, is regarded as giving rise to an action for damages, the same as if it were a common-law duty. (*Willy* v. *Mulledy*, 78 N. Y. 310; *Hayes* v. *M. C. R. R. Co.*, 111 U. S. 228; *Jaffe* v. *Harteau*, 56 N. Y. 398; *Steefel* v. *Rothschild*, 179 N. Y. 273; *Knisley* v. *Pratt*, 148 N. Y. 372; *Huda* v. *A. G. Co.*, 154 N. Y. 474; *McRickard* v. *Flint*, 114 N. Y. 222; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90; *Acton* v. *Reed*, 104 App. Div. 507.) Plaintiff's intestate was one of the persons for whose benefit the ordinance was passed. (*City of New York* v. *Trustees, etc.*, 85 App. Div. 355; 180 N. Y. 527; *Kenny* v. *B. B. S. Co.*, 121 App. Div. 684; *Shanley* v. *City of Brooklyn*, 30 Hun, 396; *Doering* v. *State*, 49 Ind. 56.)

16

COLLIN, J. The intestate, a patrolman of the city of New York, while on duty on Saturday, December 8, 1906, at seven o'clock and twenty-five minutes in the afternoon, saw a door contiguous to the sidewalk of the building occupied by the defendants, No. 10 Vestry street, partly open. The verdict of the jury established the fact that the defendants had thus left it at the close of business in the afternoon. He, after summoning a fellow-patrolman, pushed open the door, stepped through the doorway into the unlighted and dark interior and to a freight elevator shaft, extending upward from the basement, to the bottom of which he fell, receiving injuries which caused his death. The plaintiff, alleging the negligence of the defendants, brought this action to recover damages therefor. Between the door and the edge of the shaft nearest it was a floor space of two feet. Between the shaft and the sidewalk were three doors, of which that entered by the intestate was one, through which when opened the goods of defendants were transported between the street and the elevator. Between the shaft and the three doors was a perpendicular gateway of the width of the shaft in which a lattice gate moved automatically up and down in grooves so that ordinarily when the elevator was on a level with the first floor the gate would be up and when it was above the first floor the gate would be down. barring entrance to the shaft. When the intestate entered, the gate was up and there held by a nail. The elevator itself stood at about the level of the second floor. The shaft was entirely inclosed by wooden and glass partitions in which were doors leading to the various floors.

During the trial the plaintiff's attorneys affirmed to the court that the basis of the action was section 95 of the Building Code of the city of New York, upon which and section 761 of the charter of the city plaintiff relied to prove the negligence of the defendants through the violation of their provisions. The court charged the jury that the defendants owed under the common law no duty to the intestate, and further charged that the law applicable to the defendants'

duty in this case was that promulgated in section 95 of the Building Code, and that if the defendants complied with it by using reasonable care and prudence in closing the door as their evidence described, the intestate met his death through no fault of theirs and they cannot be held responsible therefor.

That part of section 95 of the Building Code material here reads as follows: " Section 95. In any building in which there shall be any hoist way or freight elevator or well hole not enclosed in walls constructed of brick or other fire proof material and provided with fire proof doors, the openings thereof through and upon each floor of said building, shall be provided with and protected by a substantial guard or gate and with such good and sufficient trap doors as may be directed and approved by the Department of Buildings; and when in the opinion of the Commissioner of Buildings having jurisdiction, automatic trap doors are required to the freight openings of any unenclosed freight elevator, the same shall be constructed so as to form a substantial floor surface when closed and so arranged as to open and close by the action of the elevator in its passage either ascending or descending. * * * Such guards or gates shall be kept closed at all times, except when in actual use, and the trap doors shall be closed at the close of the business of each day by the occupant or occupants of the building having the use or control of the same." The defendants left the door open and the lattice gate securely raised and obviously did not conform with the requirements of the section.

The theory upon which the action was tried, submitted to and decided by the jury, must be retained. Consequently and in accordance therewith we assume, without discussion or expression of opinion, that under the common law the defendants owed no duty to the intestate, and that the action is purely statutory. A claim of the defendants' counsel, which we have to consider, is that section 95 of the Building Code was a regulation relating to the manner in which the defendants should thereafter exercise reasonable care toward those

to whom they owed, prior to its adoption, the duty of care, but did not extend that duty.

The Building Code was enacted October 24, 1899. The revised charter of the city of New York of 1901 confirmed its provisions (Laws of 1901, chap. 466, sec. 407) which, therefore, are to be given the same force, within the limits of the city, as a statute. (*City of New York* v. *Trustees, etc.*, 85 App. Div. 355; affirmed on opinion below, 180 N. Y. 527.)

The Federal and State Constitutions alone bound the freedom and power of the legislature. Its authority while not infracting their provisions is plenary and unchecked, for it is that of the people of the state. The legislature may by statute create a duty unknown to the common law, a violation of which statute will give a cause of action for damages to one to whom the duty was owing. (*Willy* v. *Mulledy*, 78 N. Y. 310; *McRickard* v. *Flint*, 114 N. Y. 222; *Huda* v. *American Glucose Co.*, 154 N. Y. 474; *Pauley* v. *Steam G. & L. Co.*, 131 N. Y. 90; *Couch* v. *Steel*, 77 Eng. Com. L. 402; *Groves* v. *Wimborne*, L. R. [2 Q. B. 1898] 402.) It may enact a prohibitive or mandatory statute which, being violated, subjects the offender to an action for damages although the injury is not the direct result of the disobedience. (*Marino* v. *Lehmaier*, 173 N. Y. 530; *Queen* v. *Dayton Coal & Iron Co.*, 95 Tenn. 458.) A statute may extend the common-law duties of care in the behalf of persons or a class of persons designated therein and may originate duties for the protection and safety of those toward whom under the common law a duty of care did not exist. Section 761 of the charter of the city of New York (Laws of 1901, chap. 466), within the chapter relating to the fire department, directs that all hoistways, wellholes, trapdoors and iron shutters be closed at the completion of the business of each day by the occupant of the building, and provides that any employee of the fire department injured, or the representatives of any such employee killed, while in the performance of duty, through a violation of such requirement, shall be entitled to and have a cause of action for the recovery of damages from the culpable or negligent person. Such sec-

tion created new duties to be observed by the occupants of buildings in the interests of a particular class of persons, namely, the members of the fire department, and is obviously within legislative authority. Section 95 of the Building Code imposed likewise new duties upon the owners and occupants of buildings. The plaintiff claims and the defendants deny that the guarding of policemen against danger of personal injury is within their scope. Both parties recognize the rule that in order to justify the judgment appealed from it was not sufficient for the plaintiff to show that the defendants neglected an obligation imposed by the Building Code; she must have shown also that the obligation was imposed for the benefit of the intestate, and that he was entitled to its performance. If the defendants owed a duty, but did not owe it to him, the action will not lie. Whether or not they did owe it to him can be answered only by the construction of the section. (*Kelly* v. *Muhs Co.*, 71 N. J. L. 358; *Hamilton* v. *Minn. Desk Mfg. Co.*, 78 Minn. 3.)

The section is in its nature and effect salutary and remedial. It was adopted in order that it might effect added and desired security and safety to lives and limbs. It is incumbent upon us to give it a construction as broad and liberal as a reasonable and fair understanding of its language will permit. Its language does not, nor does the language of the sections related thereto, limit its operation to any designated class or classes of persons. Upon the other hand, there are within it indications that all persons lawfully within the designated buildings were through it to be shielded. It applies to " any building in which there shall be any hoistway or freight elevator or well hole not enclosed in walls constructed " as therein provided, and there are many buildings other than those devoted to industrial or trade purposes affected by it. It required that the guards or gates protecting the shafts and openings should be kept closed at all times, except when in actual use, and the trapdoors should be closed at the close of the business of each day. The conclusion that these requirements are not for the security of the employees whose duties within and whose pres-

ence at the buildings have terminated is reasonable, and reasonable, too, is the conclusion that it was imposed for the protection of all those who under their duties and for lawful purposes are within the buildings. The language of the section suggests and justifies our conclusion that its purpose was to guard, to the extent of its provisions, from danger or personal injury, all persons who at any time are lawfully and in the regular course of their calling or business within the buildings. The intestate was a person of that class. By section 315 of the charter aforesaid, it is "made the duty of the police department and force, at all times of day and night, and the members of such force are hereby thereunto empowered" to detect and arrest offenders and protect the rights of persons and property. The open door was, under the circumstances, an irregularity adapted and adequate to compel an investigation and search by the intestate of the premises. The law required that he should not be indifferent or inactive in relation thereto.. In a lawful way for a legitimate purpose he entered the building and had a right to assume and act upon the assumption that the defendants were affording him the protection prescribed by the ordinance. (*Parker* v. *Barnard*, 135 Mass. 116; *Ryan* v. *Thomson*, 6 J. & S. 133; *Anderson & Nelson Dist. Co.* v. *Hair*, 103 Ky. 196.)

Whether or not the intestate was free from contributory negligence was submitted to the jury, and is in no way before us. We find in the other claims of defendants no cause for reversing the judgment.

The judgment should be affirmed, with costs.

Cullen, Ch. J., Gray, Haight, Werner, Willard Bartlett and Chase, JJ., concur.

Judgment affirmed.