(148 App. Div. 258.)

### CITY OF NEW YORK v. FOSTER.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. MUNICIPAL CORPORATIONS (§ 601*)—BUILDING CODE—EFFECT AS A STATUTE.
    The Building Code of New York City, having been adopted under the authority of New York Charter of 1897, c. 378, and later under Charter of 1901 (Laws 1901, c. 466) § 407, and continued by Laws 1904, c. 628, § 2, has the force of an act of the Legislature.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1333; Dec. Dig. § 601.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 603*)—BUILDING CODE—APPLICATION.

Building Code of New York City, § 97, providing that all dumb-waiter shafts except those· which do not extend more than three stories above the cellar or basement in dwelling houses shall be inclosed with fire walls, applies not only to buildings to be erected, but to those already erected.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1334; Dec. Dig. § 603.*]

3. CONSTITUTIONAL LAW (§ 188*)—"RETROSPECTIVE LAW"—BUILDING CODE.

As a "retrospective law" is one which takes away or impairs vested rights required under existing laws, or creates a new obligation, or attaches a new disability to transactions already past, Building Code of New York City, § 97, providing that all dumb-waiter shafts, except such as do not extend more than three stories above the cellar or basement in dwelling houses, shall be inclosed in fire walls, is not retrospective in requiring the owners of existing buildings having dumb-waiters to alter those buildings to comply with the statute, but is a valid exercise of the police power in requiring such shafts to be protected if in the future maintained.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 530; Dec. Dig. § 188.*

For other definitions, see Words and Phrases, vol. 7, pp. 6199–6201.]

Scott, J., dissenting.

Appeal from Appellate Term.

Action by the City of New York against Morton H. C: Foster. From a judgment of the Appellate Term, reversing a judgment of the Municipal Court in favor of defendant (72 Misc. Rep. 67, 129 N. Y. Supp. 620), defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGH-LIN, SCOTT, and DOWLING, JJ.

Ira J. E. Hinger (George I. Woolley, of counsel), for appellant. John P. O'Brien, for respondent.

INGRAHAM, P. J: [1] The question presented on this appeal is whether section 97 of the Building Code is applicable to buildings constructed before the Building Code was adopted. The Building Code, as at present in force, was adopted on October 24, 1899, under the authority contained in section 647 of the New York Charter (chapter 378, Laws of 1897). By section 407 of the Charter of 1901 (chapter 466, Laws of 1901), there was continued in force the Building Code in force on January 1, 1902. By section 407 of the Charter, as amended by section 2 of chapter 628 of the Laws of 1904, the Building Code in force January 1, 1902, is made binding and in force in the city of New York and shall continue to be binding and in force until amended as therein provided. This Code thus enacted and confirmed has the same effect as an act of the Legislature (City of New York v. Sailors' Snug Harbor, 85 App. Div. 358, 83 N. Y. Supp. 442, affirmed on opinion below 180 N. Y. 527, 72 N. E. 1140; Post v. Kirwin, 133 App. Div. 404, 117 N. Y. Supp. 761.

[2] The Building Code thus adopted contained general provisions for the erection of new buildings and the alteration of existing buildings. Sections 3 to 79, inclusive, appear to apply mainly to the erec-

tion of new buildings or the alteration of existing buildings. Part 14, § 80, applies to shed coverings for the protection of pedestrians whenever buildings shall be erected or increased to over 65 feet in height, and also regulating the scaffolding and other incidental appliances in relation to the erection and alteration of buildings. The subsequent sections apply to the construction and alteration of buildings and the use and maintenance of existing buildings. Sections 84 to 88, inclusive, apply to existing buildings and regulate the furnaces and boilers, registers for hot air furnaces, drying rooms, and ranges and stoves, and are evidently intended to afford protection from fire. Section 89 is made to apply to buildings thereafter erected and to a building then erected in which gas or steam is used for lighting or heating. And sections 90 to 94, inclusive, relate to roofs, cornices, and tanks. Some of these sections expressly apply to buildings thereafter constructed, and others would seem to apply to existing buildings.

Part 18 of the Building Code, being sections 95 to 101, inclusive, apply to elevators, hoistways, and dumb-waiters. Section 95 provides that:

"In any building in which there shall be any hoistway or freight elevator or wellhole not enclosed in walls constructed of brick or other fireproof material and provided with fireproof doors, the openings thereof through and upon each floor of said building shall be provided with and protected by a substantial guard or gate and with such good and sufficient trap doors as may be directed and approved by the Department of Buildings."

And also provides that:

"Such guards or gates shall be kept closed at all times except when in actual use, and that the trap doors shall be closed at the close of business of each day by the occupant or occupants of the building having the use or control of the same."

The construction of this section was before the courts in Racine v. Morris, 136 App. Div. 467, 121 N. Y. Supp. 146, affirmed 201 N. Y. 240, 94 N. E. 864. In the Court of Appeals it was said:

"Section 95 of the Building Code imposes likewise new duties upon the owners and occupants of buildings. * * * The section is in its nature and effect salutary and remedial. It was adopted in order that it might effect added and desired security and safety to life and limb. It is incumbent upon us to give it a construction as broad and liberal as reasonable and fair understanding of its language will permit. * * * It applies to 'any building in which there shall be any hoistway or freight elevator or wellhole' not constructed as therein provided."

The court thus held that this section applies to existing buildings and imposes the duty upon the owners of such buildings to comply with its provisions.

Section 97 of the Building Code is the section upon which this action is based. It provides that:

"All dumb-waiter shafts, except such as do not extend more than three stories above the cellar or basement in dwelling houses, shall be inclosed in suitable walls of brick or with burnt-clay blocks, set in iron frames of proper strength, or fireproof blocks strengthened with metal dowels, or such other fireproof material and form of construction as may be approved by the Commissioner of Buildings having jurisdiction."

This provision applies, not to the building itself, but to dumb-waiter shafts in buildings.

It is clear that the dumb-waiter shafts in the defendant's building was within the description contained in this section, and it is conceded that the dumb-waiter shafts do not comply with its requirements. It is claimed, however, that this provision does not apply to dumb-waiter shafts in existing buildings, and that, as this building equipped with these shafts was in existence when the ordinance was first adopted, its owner was not required to make these dumb-waiter shafts fireproof as therein required. It is also claimed that to make this statute apply to existing buildings would give it a retroactive effect.

The language of the section is not retroactive. It makes no building then existing an illegal structure and imposes no obligation upon the owner of the building to reconstruct it. The mandate is that "all dumb-waiter shafts shall be inclosed in suitable walls of brick" or other fireproof construction. "All" certainly includes these existing, as well as those in buildings to be erected in the future. It would include a dumb-waiter shaft constructed in an existing building; and the object sought to be attained is clearly to protect buildings from fire so as to avoid endangering the lives of the occupants and to prevent the unnecessary destruction of property.

[3] The definition of a retrospective law by Judge Story in Society, etc., v. Wheeler, 2 Gall. 105, Fed. Cas. No. 13,156, is as follows:

"Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective."

I do not think that to apply this section 97 of the Building Code to all buildings existing after its passage would bring it within this definition of a retrospective law. It neither takes away nor impairs vested rights acquired under existing laws. It necessarily speaks solely in relation to the future. It says to the owner of a building in which there are existing dumb-waiter shafts, "Hereafter, if you wish to maintain these dumb-waiter shafts, they must be inclosed as required by the section." It imposes a duty upon the owner of buildings to make these dumb-waiter shafts fireproof; it creates no new obligation, imposes no new duty, attaches no new disability, in respect to transactions or considerations already past. But the obligation imposed upon the owner; if he wishes to maintain these dumb-waiter shafts in the future, is to inclose them as required by the section in question. It imposes an obligation upon the owner of buildings with dumb-waiter shafts, as section 95 imposed an obligation upon the owner of a building in which there is a hoistway or freight elevator, and this obligation the Court of Appeals, in the Racine Case, supra, has held to apply to all buildings, whether constructed before or after the passage of the ordinance.

In Tenement House Dept. v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, affirmed 203 U. S. 583,[1]

[1] 27 Sup. Ct. 781, 51 L. Ed. 328.

section 100 of the tenement house act (chapter 334 of the Laws of 1901), which required that in all existing tenement houses certain sinks and privy vaults should be removed and replaced by individual water-closets of a specified character, was held to be constitutional; the court saying that that act of the Legislature was "in part preventive legislation looking to the preservation of the public health in the future; a system of drainage is attacked which is highly dangerous and which should be surrounded by every reasonable safeguard known to science and experts in plumbing"; and that the fact that the act is applicable to existing buildings did not affect its validity. In speaking of an act regulating manufacturing establishments which related to hoisting shafts and automatic doors and elevators and to fire escapes on the outside of factories, the court said:

"Has the Legislature no right to enact laws such as this statute regarding factories unless limited to factories to be thereafter built? Because the factory was already built when the act was passed, was it beyond the legislative power to provide such safeguards to life and health as against all owners of such property unless upon the condition that these expenditures to be incurred should ultimately come out of the public purse? I think to so hold would be to run counter to the general course of decisions regarding the validity of laws of this character and to mistake the foundations upon which they are placed. * * * I do not see that the principle is substantially altered where the case is one of an existing building and it is subjected to certain alterations for the purpose of rendering it either less exposed to the danger from fire or its occupants more secure from disease."

And in Health Dept. v. Trinity Church, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, it was expressly held that the Legislature may direct that certain improvements or alterations shall be made in existing houses at the owner's expense, where it clearly appears that it tends in some plain and appreciable manner to guard and protect the public, and that a provision of the New York consolidation act declaring that tenement houses in the city previously erected should be furnished by the owners with water when they should be directed to do so by the board of health is a proper exercise of the police power of the state both as regards the public health and as a protection against fire.

These provisions of law all relate to the future maintenance and use of buildings and the appliances in them provided for the use of occupants. The section here in question requires that, if the dumb-waiter shafts are to be maintained, they must be altered to meet its requirements; and it seems to me that the provision, applying as it does to all dumb-waiter shafts—which on its face would include those in buildings already constructed as well as those in buildings thereafter constructed, requiring them to be inclosed with this fireproof material —creates an obligation resting upon the owners of buildings containing such dumb-waiter shafts which is within the police power of the state, and that the failure by the defendant to comply with the requirements of the Building Department was a violation of this obligation and justified the imposition of the prescribed penalty.

It follows, therefore, that the determination of the Appellate Term was correct, and it must be affirmed, and judgment absolute ordered,

under the stipulation, as demanded by plaintiff, with costs in this court and in the Appellate Term.

McLAUGHLIN, CLARKE, and DOWLING, JJ., concur.

SCOTT, J. (dissenting). This is an appeal by defendant from an order of the Appellate Term which reversed a judgment of the Municipal Court in favor of defendant and ordered a new trial. The action is to collect a penalty for defendant's failure to fireproof a dumb-waiter shaft in a tenement house. The question involved is a very narrow one and is whether or not section 97 of the Building Code is applicable to houses erected before the adoption of that Code.

Defendant is the owner of a tenement house in the city of New York which was erected in 1881, and which he acquired in 1895. It is not denied that the building conformed to all existing laws down to October 24, 1899, when the Building Code went into effect. On November 2, 1910, a notice of violation was served on defendant; the violation complained of being that "the dumb-waiter shaft is constructed of nonfireproof material." Defendant was also notified that failure to correct the violation would subject him to a penalty. He refused to fireproof the shaft, and this action to collect the penalty followed.

The section of the Building Code involved reads as follows:

"Section 97. Dumb-Waiter Shafts. All dumb-waiter shafts, except such as do not extend more than three stories above the cellar or basement in dwelling houses, shall be inclosed in suitable walls of brick or with burnt clay blocks, set in iron frames of proper strength, or fireproof blocks strengthened with metal dowels, or such other fireproof material and form of construction as may be approved by the commissioner of buildings having jurisdiction. Said walls or construction shall extend at least four feet above the roof and be covered with a skylight at least three-fourths the area of the shaft, made with metal frames and glazed. All openings in the inclosure walls or construction shall be provided with self-closing fireproof doors. When the shaft does not extend to the floor level of the lowest story, the bottom of the shaft shall be constructed of fireproof material."

The appellant raises various questions as to the constitutionality and reasonableness of this section if it be construed to apply to existing buildings. These questions I do not propose to discuss, as they have been satisfactorily answered by the Municipal Court and the Appellate Term. The serious question, upon which the courts below differed, is whether or not the section is by its terms applicable to buildings existing when the Code was adopted. It seems to me to be quite clear that the section cannot be so read as to apply to houses already built, unless it is to be construed as operating retroactively. In Sturges v. Carter, 114 U. S. 511, at page 519, 5 Sup. Ct. 1014, at page 1018 (29 L. Ed. 240), the Supreme Court of the United States adopted Judge Story's definition of a retroactive or retrospective law, as follows:

"Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective."

It cannot be doubted, we think, that the section above quoted, if it applies to buildings erected before its adoption, is retroactive because it clearly creates a new obligation and imposes a new duty with respect to existent buildings. The question to be determined, therefore, is whether or not the section does operate retroactively. It may be conceded, although it is not entirely clear, that its language is capable of such construction; but we are confronted with a well-settled principle of statutory construction that it is not sufficient, in order to give a law retroactive effect, that its language, in its natural and ordinary meaning, is broad enough to include past transactions so that it can be said, on reading it, that the enacting body *may* have intended to include them; but the language must be so clear and unmistakable that there is no escape from the conclusion that the enacting body did so intend. This rule was clearly stated in N. Y. & Oswego Midland R. R. Co. v. Van Horn, 57 N. Y. 473, wherein Commissioner Earl, writing for the court and fortifying his opinion by the citation of many authorities, said:

"It is always presumed that a law was intended, as its legitimate office, to furnish a rule for future action, to be applied to cases arising subsequent to its enactment. A law is never to have retroactive effect unless its express letter or clearly manifested intention requires that it should have such effect. If all its language can be satisfied by giving it prospective operation, it should have such operation only. In Dash v. Van Kleck, 7 Johns. 477, 5 Am. Dec. 291, Kent, Ch. J., says that 'we are to presume out of respect to the lawgiver that the statute was not meant to operate retrospectively,' and that a 'statute ought never to receive such a construction if it be susceptible of any other.' In Jackson v. Van Zant, 12 Johns. 169, Thompson, J., says: 'It is a first principle in legislation that all laws are to operate prospectively.' In Sayre v. Wisner, 8 Wend. 662, Savage, Ch. J., says: 'A statute never ought to have such a construction as to divest a right previously acquired, if it be susceptible of any other giving it a reasonable object and full operation without such construction.' The same learned judge says in Hackley v. Sprague, 10 Wend. 113; 'All statutes are to be construed prospectively and not retrospectively, unless they are otherwise incapable of reasonable construction.' And in People v. Supervisors of Columbia County, 10 Wend. 363, that: 'Statutes are not to be construed retrospectively unless they cannot have the intended operation by any other than a retrospective operation.' In Palmer v. Conly, 4 Denio, 376, Jewett, J., says: 'It is a doctrine founded upon general principles of the law that no statute shall be construed to have a retrospective operation without express words to that effect, either by an enumeration of the cases in which the act is to have such retrospective operation, or by words which can have no meaning unless such construction is adopted.' In Berley v. Rampacher, 5 Duer, 183, Judge Duer says: 'Although the words of a statute are so general and broad as, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to such as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed.' "

This rule of construction has been reaffirmed and applied in many cases. In People ex rel. Newcomb v. McCall, 94 N. Y. 587, the court said:

"It is a general rule often reiterated and laid down in reported decisions that laws should be so construed as to be prospective, and not retrospective in their operations, unless they are specially made applicable to past transactions and to such as are still pending."

In Matter of Miller, 110 N. Y. 216–223, 18 N. E. 139, 141, it was said:

"The rule is considered settled in this state that neither original statutes nor amendments have any retroactive force unless in exceptional cases the Legislature so declares."

Turning again to the section of the Building Code involved in this appeal, I cannot escape the conclusion that to apply it to buildings already erected when the Code was adopted would necessarily be to give it a retroactive effect. In such cases its application would be to make that unlawful which theretofore had been lawful, and to require the partial and perhaps considerable reconstruction of a building which had been erected in accordance with existent laws. May the section be construed so as to act retrospectively? I think not. It certainly is not made so to apply by specific words, and it would not be rendered meaningless if not so construed, for it would be given full effect if applied to buildings erected after its adoption. The corporation counsel refers us to Health Department v. Trinity Church, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, and Tenement House Department v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, as instances of cases in which health laws have been applied retroactively. In both of those cases, however, the statutory provisions were expressly made applicable to existing structures, and therefore did not fall within the rule above quoted. The learned Appellate Term placed its opinion in part upon an excerpt from the opinion of the Court of Appeals in Racine v. Morris, 201 N. Y. 240, 94 N. E. 864. That case, however, involved no such question as is involved here. The ordinance there discussed was section 95 of the Building Code, providing that all openings into hoistways or elevator shafts should be protected with a substantial guard or gate which "should be kept closed at all times except when in actual use." The defendant had provided sufficient guards or gates, but his fault lay in leaving one of them unclosed during the nighttime. That there had been a violation of the ordinance was not seriously questioned; the point of dispute being whether such violation gave a cause of action to plaintiff. My conclusion is that the order of the Appellate Term should be reversed, the ground of such reversal being that the section sought to be enforced cannot be construed so as to act retroactively, and that, unless so construed, it does not apply to buildings erected before the adoption of the Building Code, and which were lawfully constructed buildings when that Code was adopted.