(161 App. Div. 138)

PEOPLE ex rel. VAN BEUREN & NEW YORK BILL POSTING CO. v. MILLER, Superintendent of Buildings.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

1. MUNICIPAL CORPORATIONS (§ 76*)—BUILDING CODE—EFFECT AS STATUTE.
　　In view of the Building Code's adoption by the municipal assembly of the city of New York, pursuant to Greater New York Charter (Laws 1897, c. 378) § 647, and its ratification by the Legislature by Revised Charter (Laws 1901, c. 466) § 407, as amended by Laws 1904, cc. 602, 628, it should be given the same force within the corporate limits as a statute passed by the Legislature itself.
　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 181, 687; Dec. Dig. § 76.*]

2. MUNICIPAL CORPORATIONS (§ 625*)—POLICE POWER—PUBLIC SAFETY—BILLBOARDS.
　　Greater New York Building Code, providing by section 2 that the Code is remedial and to be liberally construed, and requiring by section 4 the

filing of plans and statements before the erection of any structure and the obtaining of approval and permit therefor, and by sections 143 and 144 prescribing fire limits within which no frame or wood structure should be built, and limiting the height of signs and billboards within such limits to 10 feet, and those constructed entirely of metal or of wood covered on all sides with sheet metal, including the uprights and braces, to 18 feet 6 inches high, such signs to be properly supported and braced so as not to be dangerous, is calculated to promote safety and prevent the destruction of property by fire, and is a valid and reasonable exercise of the police power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. § 625.*]

Appeal from Special Term, New York County.

Mandamus by the People of the State of New York, on the relation of the Van Beuren & New York Bill Posting Company, against Rudolph Miller, as Superintendent of Buildings in the Borough of Manhattan, City of New York. Peremptory writ of mandamus granted, and defendant appeals. Reversed, and application denied upon the law and not in the exercise of discretion.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Frank L. Polk, Corp. Counsel, of New York City (John P. O'Brien, of New York City, of counsel, and Samuel J. Parmenter, of New York City, on the brief), for appellant.

Charles O. Maas, of New York City (Charles O. Sullivan, on the brief), for respondent.

CLARKE, J. Relator is a domestic corporation engaged in the business of constructing and maintaining advertising signs and billboards. On or about October 10, 1912, it filed, in the office of the superintendent of buildings, statement of specifications and plans for a proposed sign to be constructed of wood, the face thereof to be covered with galvanized iron, to be erected upon the vacant lot located on the southerly side of 215th street, between Broadway and Tenth avenue, in the borough of Manhattan, with the written consent of the owner of the property upon which said sign was to be erected. Said sign was to be erected 30 feet back from the building line, was to be 22 feet in height and 50 feet in length. The superintendent disapproved in writing the said application and refused to grant permission for the construction of said sign. Whereupon the petitioner brought this proceeding to obtain a peremptory writ of mandamus to compel him to approve the application and grant the permit.

[1] The Building Code was adopted by the municipal assembly of the city of New York October 24, 1899, pursuant to section 647 of the Greater New York Charter (chapter 378, Laws of 1897). It was ratified by the Legislature by section 407, Revised Charter (chapter 466, Laws of 1901), and by chapters 602 and 628 of the Laws of 1904, amending said section 407.

"In view of this ratification by the Legislature of the power to enact the Building Code, we fail to see why the Building Code should not be given the same force within the corporate limits as the statute passed by the Legisla-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ture itself." City of New York v. Trustees of Sailors Snug Harbor, 85 App. Div. 355, 83 N. Y. Supp. 442, affirmed on the opinion below 180 N. Y. 527, 72 N. E. 1140; Post v. Kerwin, 133 App. Div. 404, 117 N. Y. Supp. 761; City of New York v. Foster, 148 App. Div. 258, 133 N. Y. Supp. 152, affirmed 205 N. Y. 593, 98 N. E. 1100; Racine v. Morris, 136 App. Div. 467, 121 N. Y. Supp. 146, affirmed 201 N. Y. 240, 94 N. E. 864.

[2] The Building Code provides in section 4 thereof for the filing of plans and statements before the erection, construction, or alteration of any building or structure or part of any building or structure, and such proposed work shall not be commenced or proceeded with until said statements and plans shall have been so filed and approved. Section 143 thereof provides as follows:

"Fire Limits.—No frame or wood structure shall be built hereafter in the city of New York within the following limits: In the borough of Manhattan— within the following described lines."

It is conceded that the property upon which it was proposed to erect the said sign is situated within the fire limits of the borough of Manhattan, as described by said section.

Section 144 is as follows:

"Frame Structures Within the Fire Limits.—The provisions, in this section contained, shall apply to buildings and structures, whether temporary or permanent, within the fire limits, as the said fire limits now are or may hereafter be established. * * * Fences, signs or billboards shall not be at any point over ten feet above the adjoining ground; except that when any fence, sign or billboard shall be constructed entirely of metal or of wood covered on all sides with sheet metal, including the uprights, supports and braces for same, it shall not be at any point over eighteen feet six inches above the adjoining ground. * * * All fences, signs, billboards and sky signs shall be erected entirely within the building line, and be properly secured, supported and braced, and shall be so constructed as not to be or become dangerous. Before the erection of any fence, sign, billboard or sky sign shall have been commenced, a permit for the erection of the same shall be obtained from the superintendent of buildings having jurisdiction, as provided in part 2, section 4, of this Code."

It appears that the proposed billboard exceeds the dimensions as restricted by said section, and, in its petition, relator states that it is not proposed to cover the back, posts, and braces of said sign with metal, and that it is only proposed to cover the front of said sign with galvanized sheet iron in order to present a better surface for the pasting of advertising matter upon said sign.

The superintendent disapproved the application, specifications, and plan, and refused a permit, because the proposed sign was unlawful and in violation of the provisions of the Building Code as above set forth.

The respondent claims that the disapproval of the superintendent, in so far as the height of the sign is concerned, is unauthorized on the ground that it constitutes a deprivation of property. Second. That the provisions of the Building Code respecting the metal sheathing of all signs is an unreasonable exercise of police power, and therefore unconstitutional.

In City of New York v. Wineburgh Advertising Co., 122 App. Div. 748, 107 N. Y. Supp. 478, the argument was advanced that, if such a

sign as the petitioner proposes to erect was held to be of the nature of a building, the board of aldermen was forbidden to adopt any ordinance regulating and restricting the height of buildings, except after a prescribed procedure which had not been followed. But this court held that such argument could not prevail. Mr. Justice Scott said:

"According to the generally accepted meaning of the terms, while a building is always a structure, yet many things may be termed structures which are not buildings (Chaffee v. Union Dry Dock Co., 68 App. Div. 578 [73 N. Y. Supp. 908]; Wingert v. Krakauer, 76 App. Div. 34 [78 N. Y. Supp. 664]), and in numerous cases in the state the term 'structure' has been specifically applied to billboards. [Citing cases.] It needs but to read the expert description of defendant's sign, and to glance at its photograph, to conclude that it is essentially a 'structure.' It is equally apparent that this particular struc-. ture is not a building, within any sense of that word. * * * It is perfectly well settled that it is competent for the Legislature, or a municipality acting under its authorization, to regulate the construction and erection of billboards and signs, and to provide that they be not erected, even upon private property, except upon approved plans and after the issuance of a license or permit by the appropriate authority. * * * Under sections 4 and 144 of the New York City Building Code it was incumbent upon the defendant, before it could lawfully erect such a structure * * * to file plans and specifications therefor with the superintendent of buildings and obtain a permit for such erection. To this extent the ordinance is undoubtedly valid."

The ordinance is to be supported as one calculated to promote safety and to prevent destruction of property from fire. Fire limits are established, and no frame or wood structures shall be built within such limits, with special provision in respect to fences, signs, and billboards.

In Fire Department v. Gilmour, 149 N. Y. 453, 44 N. E. 177, 52 Am. St. Rep. 748, the court said:

"There can be no doubt of the power of the Legislature to enact regulations for the protection of cities or villages against the serious dangers from conflagrations. It is one of the subjects to which the police power of the state extends, and there is no one in the wide range of this power upon which the Legislature has more frequently acted. It may directly enact a code of regulations applicable to exposed localities, or, as is more commonly done, it may invest municipalities with the power to pass ordinances regulating the subject. The authority given in most charters of municipalities to the legislative body to fix fire limits, to prohibit the erection of buildings therein of wood or other combustible materials, * * * are among the familiar instances of the delegated power. Regulations on this subject are restrictions of personal freedom and the free use of property. But they are justified by public necessity and so are within the acknowledged power of the Legislature."

In Health Department v. Rector, etc., 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, the court said:

"Any one in a crowded city who desires to erect a building is subject, at every turn, almost to the exactions of the law in regard to provisions for health, for safety from fire, and for other purposes. He is not permitted to build of certain materials within certain districts, because, though the materials may be inexpensive, they are inflammable, and he must build in a certain manner. * * * Although the owner in the one case is not compelled to build, yet he is limited in the use to which he may put his property by the provisions of the law. He cannot build as he wishes to, unless upon the condition of a compliance with the law."

In that case a law was upheld which required running water to be put into tenement houses, and it was held to apply to those existing

at the time of the passage of the act and those as well thereafter erected. The court further said:

"We think the act is valid as an exercise of the police power with respect to the public health, and also with respect to the public safety regarding fires and their extinguishment."

In People ex rel. Duryea v. Wilber, 198 N. Y. 1, 90 N. E. 1140, 27 L. R. A. (N. S.) 357, 19 Ann. Cas. 626, the court said:

"The laws, ordinances, rules, and provisions of the Building Code are compulsory. * * * The provisions of the Building Code are ample to enforce the physical safety of any place as against fire or collapse."

In Griffin v. City of Gloversville, 67 App. Div. 403, 73 N. Y. Supp. 684, the court had under consideration the ordinances of said city establishing fire limits and the character of a building or other structure erected within such limits. Mr. Justice Chase, after quoting from Fire Department of N. Y. v. Gilmour, supra, said:

"Where the Legislature or a municipality duly authorized enacts a general statute or ordinance prohibiting certain erections within a prescribed territory and declaring an erection in violation of such statute or ordinance a public nuisance, the reasonableness of the prohibition is not thereafter open to question."

Section 2 of the Building Code provides:

"This ordinance is hereby declared to be remedial, and is to be construed liberally to secure the beneficial interests and purposes thereof."

In New York Fire Department v. Buhler, 35 N. Y. 177, the court said:

"The act under consideration was passed for the more effectual prevention of fires in the city of New York, and, being a beneficial statute, it is to be liberally construed to attain the object intended."

In Racine v. Morris, 136 App. Div. 468, 121 N. Y. Supp. 146, a judgment in a death case was affirmed, where a policeman, entering a building in the nighttime in the performance of his duty, fell into an unguarded elevator shaft; the negligence of the defendant being predicated upon a failure to observe the provisions of section 95 of the Building Code requiring the installation of guards, gates, or trapdoors, and that they be kept closed at all times except when in actual use. The Court of Appeals affirmed in 201 N. Y. 240, 94 N. E. 864. After stating that the Building Code is to be given the same force as the statute, the court said:

"The federal and state Constitutions alone bound the freedom and power of the Legislature. Its authority, while not infracting their provisions, is plenary and unchecked, for it is that of the people of the state. * * * The section is in its nature and effect salutary and remedial. It was adopted in order that it might effect added and desired security and safety to lives and limbs."

In City of New York v. Foster, 148 App. Div. 258, 133 N. Y. Supp. 152, affirmed 205 N. Y. 593, 98 N. E. 1100, the question was whether section 97 of the Building Code, requiring dumb-waiter shafts to be fire-proofed, was applicable to buildings constructed before the Build-

ing Code was adopted.   This court, in deciding that it did, said, by Mr. Presiding Justice Ingraham:

"It imposes an obligation upon the owner of buildings with dumb-waiter shafts, as section 95 imposed an obligation upon the owner of a building in which there is a hoistway or freight elevator; and this obligation the Court of Appeals in the Racine Case has held to apply to all buildings, whether constructed before or after the passage of the ordinance"—

citing Tenement House Dept. v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, 1 Ann. Cas. 439, affirmed 203 U. S. 583, 27 Sup. Ct. 781, 51 L. Ed. 328, and Health Department v. Rector, etc., 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579.

I have no doubt that the restrictions upon the height, material, and manner of construction of fences, signs, or billboards are reasonable and valid.   The relator places reliance upon People ex rel. Wineburg Advertising Co. v. Murphy, 129 App. Div. 260, 113 N. Y. Supp. 855, affirmed 195 N. Y. 126, 88 N. E. 17, 21 L. R. A. (N. S.) 735.   No such question was there involved.   The difficulty with the particular provision of the ordinance there condemned was that it was not directed to the structure, but to the use to which it was to be put.   As pointed out both in this court and in the Court of Appeals, there were no limitations placed upon structures upon buildings unless they were used· for the display of advertisements.   There was also no question in that case of the material of which the so-called sky signs were composed. They were of metal, and not of wood.   The distinction is clearly shown in the opinions.

In this court Mr. Justice Scott said:

"Other provisions of the section require all fences, signs, billboards, and sky signs to be erected wholly within the building line, and to be properly secured, supported, and braced, and further require that, before any such be erected, a permit be obtained therefor from the superintendent of buildings. No question is made by the appellant as to the right of the municipality, under proper legislative sanction, to regulate the erection of fences, billboards, and signs, and to prescribe reasonable conditions and restrictions upon such erection, and to require that a permit be obtained from the proper authority. * * * In considering whether the ordinance now under discussion falls within these rules, it is pertinent to note two features of·it which serve to distinguish it from the ordinances sustained in other cases in this state.   In the first place, it is not directed against structures generally placed upon the roofs of buildings, nor even against structures of a particular kind, or constructed in a particular manner, or of specified·materials.   The legality or illegality of a structure upon the roof of a building is not made dependent ·upon the nature of the structure itself, but upon the use to which it is to be put."

In the Court of Appeals (195 N. Y. 126, 88 N. E. 17, 21 L. R. A. [N. S.] 735) Judge Chase said:

"The police power, so difficult to define, but so frequently invoked, is confined to such reasonable restrictions and prohibitions as are necessary to guard public health, morals, and safety, and to conserve public peace, order, and the general welfare.   Regulations and ordinances, within such general definition, are valid.   The city may make and enforce such regulations and ordinances, although they interfere with and restrict the use of private property.   Compensations for such interference with and restriction in the use of property is found in the share that the owner enjoys in the common benefit secured to

all. * * * This court in City of Rochester v. West, 164 N. Y. 510 [58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659], sustained an ordinance forbidding the erection of billboards more than six feet in height without the consent of the common council. The court, referring to the charter of the city, say: 'We think this statute conferred upon the common council of the city authority to regulate boards erected for the purpose of bill posting, so far, at least, as such regulation was necessary to the safety or welfare of the inhabitants of the city, or persons passing along its streets. * * * It is obvious that its purpose was to allow the common council to provide for the welfare and safety of the community in the municipality to which it applied. If the defendant's authority to erect billboards was wholly unlimited as to height and dimensions, they might readily become a constant and continuing danger to the lives and persons of those who should pass along the street in proximity to them.' * * * A municipality, in enacting ordinances relating to the safety of the public, may undoubtedly make reasonable classifications among structures with reference, to their location and the necessity or importance thereof without offending against the provisions of the fourteenth amendment of the federal Constitution. The classification, as well as the ordinance itself, must be based upon some necessity justifying the exercise of the police power. It has been said that the police power of a municipality is allied to the right of self-preservation in an individual. In exercising such power or right, the purpose thereof, and the limitations thereon, should not be forgotten. * * *"

The concurring opinion of Judge Haight, with whom Judge Willard Bartlett concurred, said:

"The ordinances of the city of New York pertaining to the height and manner of construction of fences, signs, or billboards, whether upon the ground or housetops, are for the protection of the public from injury, and consequently, if reasonable, are valid under the police powers which the Legislature has delegated to the board of aldermen. * * * It would therefore be entirely proper and within the police powers of the municipality, through its board of aldermen, to enact an ordinance limiting the construction of fences, signs, or billboards, either upon the ground or the housetops, to those that are safe, and to also designate the material and manner in which they shall be constructed, and to limit the size or height thereof within reasonable bounds."

I think I have made it clear that the proposed sign, being intended to be constructed of wood and not of metal or sheathed in metal, comes within the prohibition of the ordinance as being erected within the fire limits, and that such provisions are reasonable. The provision in regard to limiting the height to 18 feet 6 inches is also reasonable and violates no constitutional provision.

In People ex rel. Kemp v. D'Oench, 111 N. Y. 359, 18 N. E. 862, Earl, J., said:

"It is provided in the act (chapter 454 of the Laws of 1885) that 'the height of all dwelling houses and of all houses used or intended to be used as dwellings for more than one family,' thereafter to be erected in the city of New York, shall not exceed 80 feet in streets and avenues exceeding 60 feet in width. We have no doubt of the competency of the Legislature in the exercise of the police power under the Constitution to pass such an act."

If the power exists to regulate the height of buildings, it certainly extends to such a structure as relator proposes to erect. The superintendent of buildings properly performed his duty in refusing to issue a permit upon the plans and specifications which admittedly did not conform to the provisions of the Building Code, which we hold reasonable and valid.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements to the appellant, and the application denied, with $10 costs to the appellant; and, in order to allow a review, the order may state that the denial of the application is upon the law and not in the exercise of discretion. All concur.