### CITY OF NEW YORK v. O. J. GUDE CO.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

1. MUNICIPAL CORPORATIONS—POLICE POWER—BUILDING REGULATIONS—PERMITS—MANDAMUS.

The fact that a municipal ordinance, regulating the height of sky signs, is unreasonable and void, does not justify the erection of any height of sky sign without the permit required for a sky sign by the ordinance; but a party may apply for a permit, asking that the superintendent of build-

ings determine whether or not the proposed sky sign is properly construct-
ed, and may enforce the performance of that duty by mandamus.

2. SAME—ENFORCEMENT OF REGULATIONS—SUMMARY PROCEEDINGS—STATUTORY
PROVISIONS.
    Consolidation Act, Laws 1882, p. 140, c. 410, § 506, as amended by Laws
1892, p. 583, c. 275, § 42, authorizes the superintendent of buildings to
institute any appropriate action or proceeding at law or in equity to re-
strain the erection of any building or structure in violation of the provi-
sions of the title. Building Code of City of New York, § 151, re-enacts
this provision, using its identical language. *Held*, that section 506 of the
Consolidation Act is still in force, and that under it the superintendent of
buildings is authorized to institute any appropriate action or proceeding
at law or in equity to restrain the erection of any building or structure
not complying with any of the provisions of the Building Code; but it
does not authorize the court to require a structure to be removed, on a
petition of the superintendent of buildings, by an order based on an affi-
davit that the structure has been erected in violation of the Building Code,
without giving opportunity to meet the testimony except by affidavit.
    Clarke, J., dissenting.

Appeal from Special Term.

Proceedings in the matter of the application of the city of New
York against the O. J. Gude Company for a summary order requiring
defendant to remove certain signs. From an order directing defend-
ant to remove the signs, it appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE,
SCOTT, and LAMBERT, JJ.

Julius M. Mayer, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J. The court by a summary order has required the
appellant, the O. J. Gude Company, to remove certain signs upon
private property located on the corner of Broadway and Forty-Sec-
ond street in the city of New York under the provisions of certain or-
dinances of the city of New York, being part of the Building Code.
This order was granted on the application of the city of New York
based upon a petition verified by the superintendent of buildings.
This petitioner alleges that the Municipal Assembly of the city of New
York established a code of ordinances known as the "Building Code,"
which regulated the construction, alteration, or removal of buildings
or structures erected or to be erected in the city of New York, which
took effect on the 23d of December, 1899, and was afterwards incor-
porated as chapter 15 of the Code of Ordinances of the city of New
York, which was approved by the mayor on December 1, 1906. The
petition further alleges that the O. J. Gude Company was the owner of
a certain structure located on the top of the building on the southwest
corner of Broadway and Forty-Second street, in the city of New
York; that on the 25th of March, 1907, the said O. J. Gude Company
erected and constructed and maintains on the top of the said building
the said structure, which is of metal, 40 feet long, and 28 feet high
above the front wall or cornice of said building; that the said sign
is a device or representation in the nature of an advertisement or an-
nouncement, and is a sky sign, within section 144 of the Building
Code, and was erected and constructed in violation of the provisions

of section 4 of the Building Code, and in violation of section 144 of the said Building Code, in the following particulars: (1) That it was constructed without submitting a plan of the proposed work to the superintendent of buildings, and without the approval by said superintendent of buildings of any specifications or plans; (2) that before the erection of said sign no permit was obtained from the superintendent of buildings for the erection thereof; (3) that the said sign has been erected and constructed to the height of over 9 feet over the front wall and cornice of the above-described building to which it is attached and by which it is supported, to wit, 28 feet above the front wall and cornice of said building, in direct violation of section 144 of said Building Code. It is further alleged that the superintendent of buildings issued an order requiring the O. J. Gude Company to remove the said sign, which order was duly served upon the said Gude Company, but which was not complied with.·

In answer to this application, the O. J. Gude Company submitted affidavits, from which it appeared that this sign was erected upon the roof of the building under an agreement with the owner or lessee of the building, is constructed entirely of metal, and is in all respects safe and erected in accordance with the provisions of the Building Code, except that in reference to the height above the top of the building.

The structure complained of is undoubtedly a "sky sign," within section 144 of the Building Code. The restrictions upon the erection of these sky signs are that they shall be constructed entirely of metal, including the uprights, supports and braces for the same, and shall not be at any point over nine feet above the front wall or cornice of the front wall or building to which they are attached or by which they are supported; that they shall be entirely within the building line and be properly secured, supported, and braced, and shall be so constructed as not to be or become dangerous, with the further provision that, before they are erected, a permit shall be obtained from the superintendent of buildings. It is conceded in this case that no application for a permit to the superintendent of buildings was made, nor was such permit obtained. It was proper that plans for such a structure should be submitted to the public officials, so that it could be ascertained whether or not a structure of this kind erected upon the top of a building was properly constructed and securely fastened to the building so as to prevent danger of its being blown into the street, or so constructed as not to embarrass firemen in the event of a fire in a building to which the structure was attached, or in an adjoining building, and generally to determine whether the structure was such as would not endanger the public or the adjoining buildings. The excuse offered by the appellant for not applying for this permit from the superintendent of buildings was that it understood that the superintendent of buildings had no jurisdiction to grant a permit for signs extending over nine feet above the cornice of the building. But assuming that to be true, and assuming the regulation as to the height of these sky signs to be invalid, that did not justify any one in constructing any kind of a structure that he pleased without a permit, as required by the Building Code, so that, as this structure was erected without submitting the plans to the superintendent of buildings and obtaining a permit from

him, it was an unauthorized and illegal structure. If the provision as to the height of these sky signs was invalid, the appellant could have applied for a permit asking that the superintendent should determine whether or not the sky sign was constructed in such a manner as to protect the public and comply with the ordinance in other respects, and could have enforced the performance of that duty by mandamus.

The objection, however, is made that this proceeding, which is an application to the Special Term of the Supreme Court for a summary order requiring the appellant to remove this sign, was not authorized. This proceeding is instituted under section 506 of the Consolidation Act (chapter 410, page 140, of the Laws of 1882, as amended by section 42, c. 275, p. 583, of the Laws of 1892), which authorizes the superintendent of buildings to "institute any appropriate action or proceeding, at law or in equity,  *  *  *  to restrain or correct the erection or alteration of or to require the removal of, or to prevent the occupation or use of the building or structure erected, constructed or altered, in violation of or not in compliance with any of the provisions of this title." Section 151 of the present Building Code reenacts this provision, using that identical language.

I agree with Mr. Justice Scott, in the case of City of New York v. M. Wineburgh Advertising Company (decided herewith) 107 N. Y. Supp. 478, that section 506 of the Consolidation Act is still in force, and that under it the superintendent of buildings was authorized to institute any appropriate action or proceeding, at law or in equity, to restrain or correct the erection or alteration of, or to require the removal of, or to prevent the occupation or use of, the building or structure erected, constructed, or altered in violation of, or not in compliance with, any of the provisions of the Building Code. But the question is: What was intended by the words "any appropriate action or proceeding, at law or in equity." Civil rights are enforced in courts either by actions or certain special proceedings, both of which are regulated by the Code of Civil Procedure. The right of a person against whom a claim is made, either at law or in equity, to be confronted by the witnesses against him, to have a right to cross-examine them, and to introduce evidence on his own behalf, is carefully preserved both by the Constitution and the Codes of Procedure as to the authorized actions and special proceedings, and in an action the right to this investigation before either a judge or a jury is assured by the Constitution to any person against whom a claim is made. The ordinary meaning which would be given to the phrase "appropriate action or proceeding" would be to authorize the superintendent of buildings to adopt any of the recognized actions or proceedings, either at law or in equity, for the enforcement of the provisions of the Building Code. It certainly cannot be supposed that the Legislature, by this general language, intended to reverse all of the statutory rules in relation to the enforcement of claims against individuals, by allowing the superintendent of buildings to institute an entirely new proceeding, by which rights to property of great value should be determined in a summary way upon affidavit, without the safeguards which have been found to be necessary in the disposition of questions of facts of affording an opportunity to cross-

examine the witnesses and introduce testimony subject to the common-law rules of evidence. If this power is presumed to have been lodged in the superintendent of buildings, the owner of any building, notwithstanding its character or cost, may be compelled to remove it by a summary order of the court at Special Term, based upon an affidavit that the building has been erected in violation of some of the provisions of the Building Code, without opportunity of cross-examining the witnesses relied on to prove such violation, or without an opportunity of fairly meeting the testimony, except by affidavit. Experience has demonstrated that a trial by affidavit is an extremely unsatisfactory way of disposing of questions of fact. Assuming that there would be no constitutional objections to depriving a person of his property in such a summary manner—a question which I think at least is open to serious doubt—the authority to institute such a proceeding should not be inferred from language which is perfectly consistent with the intention to authorize the superintendent to institute one of the recognized legal proceedings by which civil rights are enforced or protected. That the usual action for an injunction is amply sufficient to protect the rights of the public is apparent, as at any time the court by a temporary injunction, in such an action, can prohibit the violation of any of the provisions of the Building Code, and by final judgment, where the rights of the parties can be protected, can require the building erected in violation of it to be removed. No necessity exists for the institution of such a summary proceeding, and there is nothing in the statute, as I read it, which authorizes it.

In relation to the question as to the validity of this restriction, when applied only to advertising signs, and not to a structure to be used for any other purpose, I do not think anything more is required than has been said by Mr. Justice Scott in the case of City of New York v. M. Wineburgh Advertising Company (decided herewith), 107 N. Y. Supp. 478. My views upon this question were expressed in the case of People v. Green, 85 App. Div. 400, 83 N. Y. Supp. 460, and were concurred in by a majority of the court. As I think this proceeding was unauthorized, I am in favor of reversing the order appealed from on that ground only, leaving the other questions to be finally determined when they are properly presented.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the application denied, with $10 costs.

PATTERSON, P. J., and LAMBERT and SCOTT, JJ., concur. CLARKE, J., dissents.

SCOTT, J. (concurring). I find myself constrained, although reluctantly, to concur with Mr. Justice INGRAHAM in the view that no legal authority can be found for the summary proceeding instituted by the city of New York in this matter, notwithstanding such proceedings have been resorted to for many years, and, so far as I can ascertain, have never before been seriously questioned. I cannot escape the conclusion, however, that section 506 of the Consolidation Act (Laws 1882, p. 140, c. 410), as amended by section 42 of chapter

275, p. 583 of the Laws of 1892, which I consider to be still in force (City of New York v. Wineburgh Advertising Co. [decided herewith] 107 N. Y. Supp. 478), authorizes, as "appropriate" proceedings, only such actions and special proceedings as are provided for by the Code of Civil Procedure, and does not authorize such a summary proceeding as the present.

The section quoted does, however, in plain terms, authorize a temporary injunction, which I think may be either restrictive or mandatory, and which should issue without hesitation where the facts are perfectly clear, or are, as in the present case, undisputed. Such a case would be presented where the structure complained of was imminently dangerous, or where it is one requiring a permit for its erection, but has been or is being erected without an attempt to secure such a permit. Such unlawful structures are prohibited under the police power of the state, and in such cases summary measures, when authorized by the Legislature, have always been sustained, and the right of trial by jury does not attach to them. Heister v. Board of Health, 37 N. Y. 669.

Myer Nussbaum, for appellant.
Theodore Connoly, for respondent.

