CITY OF NEW YORK v. M. WINEBURGH ADVERTISING CO.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

1. INJUNCTION—SUBJECTS OF PROTECTION AND RELIEF—ENJOINING VIOLATION OF MUNICIPAL ORDINANCES—BUILDING REGULATIONS.

Before the enactment, in 1897, of the first Greater New York Charter, the erection of buildings in the city of New York was regulated by Laws 1892, p. 583, c. 275, § 42, by which authority was given to the department of buildings to institute any appropriate action or proceeding, at law or in

equity, to restrain or remove any building or structure attempted to be constructed in violation of the building law. By the first Greater New York Charter, Laws 1897, p. 224, c. 378, § 647, the several acts in force at the time of its passage, concerning the construction of buildings or structures in the city, were continued in full force and effect. It also provided that the municipal assembly should have power to establish a code of ordinances, to be known as the "Building Code," providing for all matters concerning the construction of buildings or structures, and that upon the adoption of such Code the other acts relating thereto should be repealed. In pursuance thereof, the common council, in 1899, adopted a Building Code, of which section 151 is in substantially the same language as section 42 of chapter 275, p. 583, Laws 1892. By Revised Charter 1901, Laws 1901, p. 179, c. 466, § 407, the Building Code, as it existed on January 1, 1902, and all then existing laws relating to the construction of buildings or structures within the city, were declared to be in force, and it was expressly enacted that no right of remedy of any character should be lost by reason of that chapter. *Held,* that under these statutes an injunction will lie to enforce sections of the Building Code relating to the erection of sky signs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 176.]

**2. MUNICIPAL CORPORATIONS—ORDINANCES—"STRUCTURES."**

First Greater New York Charter, Laws 1897, p. 224, c. 378, § 647, provided that the municipal assembly shall have power to establish a code of ordinances, known as the "Building Code," relating to the construction of buildings or structures erected in New York City. In pursuance of this section, the common council, in 1899, adopted a Building Code regulating the erection of buildings and structures. *Held,* that a sky sign erected on the roof of a building for the purpose of advertising is a "structure," within the meaning of the statutes and ordinances, and hence subject to control thereby.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1333.]

**3. CONSTITUTIONAL LAW—POLICE POWER — DETERMINATION OF QUESTIONS — POWER OF COURTS.**

While it lies primarily within the discretion of a legislative body to determine what laws are appropriate and proper in the exercise of the police power of the state, the duty remains in the courts, when called upon, to scrutinize the measures sought to be enforced, to see whether they really fall within the limitations of the police power.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 42.]

**4. INJUNCTION—DEFENSES—ORDINANCES—VALIDITY—RIGHT TO QUESTION.**

Where defendant, as required by New York Building Code, §§ 4, 144, filed plans and obtained a permit to erect a sky sign which was allowable under the Code, and then proceeded to erect a sign of a height not allowed by the Code, his permit, based upon such plans, furnished no authority for the erection of the sign, and in proceedings to enjoin the erection thereof he is in no position to attack the validity of the ordinance as a proper exercise of the police power, though he might have done so upon an application for a mandamus to compel the issuance of a permit for the erection of a sign not allowed by the Building Code, if the permit was refused.

Appeal from Special Term.

Action by the city of New York against M. Wineburgh Advertising Company to restrain the erection by the defendant of a sky sign. From an order granting a motion to continue a temporary injunction, defendant appeals. Affirmed.

This is an action in equity by the city of New York to restrain the construction by defendant of what is denominated as a "sky sign," erected up-

on the roof of a building in the city, and to compel the removal of so much of said sign as has already been erected. The defendant is a domestic corporation engaged in constructing and maintaining advertising signs. The sign, the erection of which is sought to be restrained, stands upon the roof of a modern fireproof brick and steel building, with a steel roof. The building fronts on East Twenty-Second street, and extends north about the middle of the block between Twenty-Second and Twenty-Third streets. The defendant has invested a very large amount of money in signs and leases of roof privileges, and has leased from the owner of the premises above described the privilege of erecting said sign thereon, agreeing to pay the ren'al of $400 per annum, and holds a contract from which it can realize about $400 per month from the use of said sign. The sign is what is termed a "skeleton sign," composed of angle irons, and is firmly bolted and clamped to the roof of the building. It is 44 feet long and 15 feet high; the bottom being 5' feet 6 inches above the roof of the building. The front wall or cornice of the building rises 9 feet 6 inches above the roof, so that, when completed, the top of the sign will rise 21 feet and 6 inches above the roof, and 11 feet above the front wall or cornice. The sign extends from the rear wall of the building at the east end diagonally across the roof, being at its nearest point about 40 or 50 feet back of said front wall or cornice. The defendant is charged with violating sections 4 and 144 of the Building Code of the City of New York.

Section 4 of that Code provides that, "before the erection, construction or alteration of any building or part of any building, structure or part of any structure, or wall," the owner, or lessee, or agent of either, or the architect or builder employed by said owner or lessee, shall file plans and specifications of the proposed work, and it is further provided that such work shall not be commenced or proceeded with until the plans and specifications so filed have been approved by said commissioner of buildings, after which such work must be constructed in accordance with said plans and specifications, and it is made the duty of the commissioner of buildings to approve or reject any plan filed with him within a reasonable time.

Section 144 provides, in part, as follows: "Any letter, word, model, sign, device or representation in the nature of an advertisement, announcement or direction, supported or attached wholly or in part, over or above any wall, building or structure, shall be deemed a 'sky sign.' Sky signs shall be constructed entirely of metal, including the uprights, supports and braces for same, and shall not be at any point over nine feet above the front wall or cornice of the building or structure to which they are attached, or by which they are supported. All fences, signs, bill boards and sky signs shall be erected entirely within the building line, and be properly secured, supported and braced, and shall be so constructed as not to be or become dangerous. Before the erection of any fence, sign, bill board or sky sign shall have been commenced, a permit for the erection of the same shall be obtained from the superintendent of buildings, having jurisdiction as provided in part 2 of section 4 of this Code."

The defendant in June, 1907, filed with the superintendent of buildings specifications and plans for the erection of a sky sign upon the building, upon which it is now proceeding to erect a sign. These plans and specifications indicated that it was intended to erect a sign 9 feet high and 50 feet long, so that at no point should said sign be over 9 feet above the front wall or cornice of said building. These plans and specifications were thereupon approved by said superintendent, and a permit issued for the erection of said sign in accordance with the plans and specifications thus filed and approved.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, SCOTT, and LAMBERT, JJ.

Louis Marshall, for appellant.
Theodore Connoly, for respondent.

SCOTT, J.  Before proceeding to discuss the question as to the validity of the "sky sign" ordinance, it is necessary to consider an objection raised by defendant to the form of action adopted by plaintiff. It is argued that an injunction will not lie to enforce a municipal ordinance.  As a general rule, this is undoubtedly true (Village of New Rochelle v. Lang, 75 Hun, 608, 27 N. Y. Supp. 600; City of Mount Vernon v. Seeley, 74 App. Div. 50, 77 N. Y. Supp. 250), but the Legislature has the right to establish such a remedy, and we think that it has done so with reference to violations of the Building Code in the city of New York.  Before the enactment, in 1897, of the first Greater New York Charter, the erection of buildings in the city of New York was regulated by statute.  Chapter 275, p. 543, Laws 1892.  By section 42 of that act authority was given to the department of buildings to institute any "appropriate action or proceeding at law or in equity to restrain, correct or remove" any building or structure attempted to be constructed in violation of the building law.  This language seems to be sufficiently broad to warrant the institution of a suit in equity and the issuance of an injunction therein, whether restrictive or mandatory. By section 647 of the first Greater New York Charter (chapter 378, p. 224, Laws 1897), the several acts in force at the time of its passage, concerning, affecting, or relating to the construction, alteration, and removal of buildings or other structures included within the city of New York, as constituted by said charter (including the above-cited chapter 275, p. 543, Laws 1892), were continued in full force and effect, except as modified by said charter (as section 42, p. 583, of said chapter, Laws 1892, was not).  It was further provided that the municipal assembly, created by the charter, should have power to establish and from time to time amend a code of ordinances to be known as the Building Code, "providing for all matters concerning, affecting or relating to the construction, alteration or removal of buildings or structures erected or to be erected in the city of New York."  It was also provided that, upon the adoption of such a code, the several acts relating to that subject, and by the section continued in force, should cease to have any force and effect, and should be repealed.  In pursuance of this section, the common council, in 1899, adopted a "Building Code."  Section 151 of that Code is in substantially the same language as section 42 of chapter 275, p. 583, Laws 1892, including the provision for equitable relief.  By section 407 of the Revised Charter of 1901 (chapter 466, p. 179, Laws 1901), the Building Code as it existed on the 1st day of January, 1902, "and all then existing laws affecting or relating to the construction, alteration or removal of buildings or other structures within the city of New York," were declared to be binding and in force in said city, and it was expressly enacted that:

"No right or remedy of any character shall be lost, or impaired or affected by reason of this chapter."

It may be conceded, as argued by the defendant, that a municipal assembly has no power to extend the jurisdiction of, or to confer jurisdiction upon, the Supreme Court, and, if the right to enjoin a violation of the building law rested only upon an ordinance of the com-

mon council, the point would be entitled to much consideration. It seems to be quite clear, however, that the Legislature, in authorizing the common council to adopt a Building Code, intended to confer authority upon the municipal body to do that which it had power to do, and that, when the Legislature provided that the building laws formerly in force should be repealed upon the adoption of a Building Code, it meant that those provisions of the Building Code, which it was within the power of the common council to adopt, should supersede and stand in the place of legislative acts covering the same field. If, therefore, the common council had no power to enact section 151 of the Building Code, purporting to provide a remedy by injunction, the section must be treated as if it had not been included in the Code at all, and consequently section 42, c. 275, p. 583, Laws 1892, embracing a subject not within the authority of the common council, and therefore not validly treated of by the Building Code, remained unrepealed. People ex rel. Pumpyansky v. Keating, 168 N. Y. 390, 61 N. E. 637. This view is confirmed by the language quoted above from the revised charter of 1901, which continued in force not only the Building Code, but also all existing laws affecting the construction, alteration, and removal of buildings, appropriate language to continue in force such laws as were not superseded by the Building Code. So that whether section 42 of the act of 1892 was left unaffected by the Building Code, or section 151 of the Building Code was confirmed and ratified by the act of 1901, the right to prevent violations by injunction still continues. It is not necessary to hold, and we see no reason for holding, that the Legislature ever intended to abolish the speedy, orderly, and convenient remedy expressly provided by section 42 of the act of 1892, and our view in this regard is strengthened by the care with which the revised charter of 1901 preserved every right or remedy of every character. We are therefore of the opinion that this action will lie.

The appellant further insists that the regulation of sky signs by the Building Code was unauthorized, because the power given by the Legislature was confined to "matters concerning or relating to the construction, alteration or removal of buildings or structures erected or to be erected in the city of New York," and an ingenious argument is made, based upon the rule of construction nocitur a sociis, that by a structure as used in the charter is meant a construction in the nature of a building. It is insisted that such a sign as defendant has erected is not in the nature of a building, and therefore not within the statute, but that, if it be held to be of the nature of a building, the ordinance limiting its height was never validly adopted, because, by section 407 of the charter of 1901, the board of aldermen is forbidden to adopt any ordinance regulating and restricting the height of buildings, except after public hearings, and unless such ordinance had been approved beforehand by the board of estimate and apportionment. These arguments cannot prevail. It is our duty to read statutes according to the natural and most obvious import of their language, without resorting to subtle and forced construction, for the purpose of either limiting or extending their operation. McCluskey v. Cromwell, 11 N. Y. 593, 601; Kemp v. D'Oench, 111 N. Y. 359, 18 N. E. 862. Accord-

ing to the generally accepted meaning of the terms, while a "building" is always a "structure," yet many things may be termed "structures" which are not "buildings." Chaffee v. Union Dry Dock Co., 68 App. Div. 578, 73 N. Y. Supp. 908; Wingert v. Krakauer, 76 App. Div. 34, 78 N. Y. Supp. 664. And in numerous cases in the state the term "structure" has been specifically applied to billboards. City of Rochester v. West, 29 App. Div. 125, 51 N. Y. Supp. 482; Gunning System v. Buffalo, 75 App. Div. 31, 77 N. Y. Supp. 987; Buskirk v. O. J. Gude Co., 115 App. Div. 330, 100 N. Y. Supp. 777. It needs but to read the expert description of defendant's sign, and to glance at its photograph, to conclude that it is essentially a "structure." It is equally apparent that this particular structure is not a building, within any sense of that word.

We are thus brought to defendant's main contention, which is that the ordinance is unreasonable and oppressive, and therefore void. If the ordinance is to be sustained at all, it must be because it falls within that inherent power of sovereignty which is known as the police power, meaning thereby the power of the state to preserve and promote the public welfare by prohibiting things hurtful to good order, and health, morals, and welfare of the people, and to establish such rules and regulations for the conduct of all persons and the use and management of all property as may be conducive to the public interest. The existence of this power is universally recognized, although, from its very nature, it is impossible to precisely define its extent and limitation. To justify an act or ordinance which in any degree interferes with the liberty of the individual, or with the full enjoyment by him of his property, it must appear by reasonable intendment that it is calculated, intended, convenient, and appropriate to conserve the public health, welfare, comfort, or morals, and, while it lies primarily within the discretion of the enacting body to determine what laws are appropriate and proper for that purpose, yet the duty remains in the courts, when called upon, to scrutinize the measures sought to be enforced, to see whether they really fall within the limitations of the police power. Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636.

It is charged against the "sky sign" ordinance that it is unreasonable, in that it fixes arbitrarily and inflexibly a limit of nine feet upon the height of such signs, without regard to the method of their construction or the height of the buildings upon which they are to be placed. And it is further insisted that it is apparent upon the face of the ordinance that it was not adopted for the purpose of promoting the public health, comfort, or welfare, and is not calculated to achieve that purpose; that the prohibition does not extend to structures generally erected upon roofs, but only to structures intended to be used for a particular, and perfectly legal purpose, so that the identical structure would be legal and authorized, if not used as a means of advertising, and become illegal and unauthorized if devoted to advertising uses. We fully recognize the force of these objections, and find much support for them in judicial expressions. People v. Green, 85 App. Div. 400, 83 N. Y. Supp. 460; Crawford v. City of Topeka, 51 Kan. 760, 33 Pac. 476, 20 L. R. A. 692, 37 Am. St. Rep. 323; City of Chicago v. Gunning System, 214 Ill. 628, 73 N. E. 1035, 70 L. R. A.

230. We do not, however, consider it necessary to pass upon these objections at this time, for the defendant has not yet placed itself in a position to raise them. It is perfectly well settled that it is competent for the Legislature, or a municipality acting under its authorization, to regulate the construction and erection of billboards and signs, and to provide that they are not to be erected, even upon private property, except upon approved plans, and after the issuance of a license or permit by the appropriate authority. Such reserved power is strictly analogous to, and indeed identical with, that which justifies the enactment of all urban building laws and codes. City of Rochester v. West, 29 App. Div. 125, 51 N. Y. Supp. 482, affirmed 164 N. Y. 510, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659; Gunning System v. City of Buffalo, 75 App. Div. 31, 77 N. Y. Supp. 987; City of Passiac v. Patterson Bill Posting A. and S. Painting Co., 71 N. J. Law, 75, 58 Atl. 343.

Under section 4 and 144 of the New York City Building Code, it was incumbent upon the defendant, before it could lawfully erect such a structure as it has erected, to file plans and specifications therefor with the superintendent of buildings, and obtain a permit for such erection. To this extent the ordinance is undoubtedly valid, and with it the defendant has not complied. It is true that it appears to have filed plans and obtained a permit to erect a sign, but not the sign which it has proceeded to erect. Its plans showed a structure not more than 9 feet high, and hence within the limitations of the ordinance. Such a permit, based upon such misleading plans, furnished no authority for the erection of a sign 15 feet high, and the defendant is no better position than if it had applied for and obtained no permit whatever. The plaintiff is undoubtedly right in contending that the defendant could not lawfully erect the sign without applying for and procuring the prescribed permit. People ex rel. Lodes v. Department of Health, 117 App. Div. 856, 103 N. Y. Supp. 275; City of New York v. Burleson Co., 89 App. Div. 222, 85 N. Y. Supp. 763. If plans had been filed for the precise structure which plaintiff has erected, and a permit had been refused upon the ground that the structure, being a "sky sign," was proposed to be built over nine feet high, the validity of the ordinance might have been tested upon an application for a mandamus to compel the issuance of a permit.

For the reasons stated, the injunction was properly granted, and the order appealed from must be affirmed, with $10 costs and disbursements. All concur; CLARKE, J., in result.