MECCA REALTY CO. v. KELLOGG'S TOASTED CORN FLAKES CO.
(No. 6790.)

(Supreme Court, Appellate Division, First Department. February 11, 1915.)

1. CONTRACTS (§ 152*)—CONSTRUCTION—LANGUAGE.
    Words used in contracts are ordinarily to be interpreted in accordance with their usual meaning, and where there is no ambiguity resort to rules of construction may not be had.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 732, 733, 738; Dec. Dig. § 152.*]

2. CONTRACTS (§ 169*)—CONSTRUCTION—INTENTION OF PARTIES.
    In construing written contracts, it is the court's duty to place itself in the situation of the parties, and from a consideration of the circum-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stances, and the apparent object of the parties, to determine the meaning and intent of the language employed, which intent is to be given effect.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752; Dec. Dig. § 169.*]

3. LANDLORD AND TENANT (§ 103*)—LEASE FOR ADVERTISING SIGN—TERMINA-TION—"BUILDING."

The roof of a ten-story building, immediately north of a block on which the buildings were low, so that the tenant's advertising sign, 80 feet in height, was especially conspicuous, was demised by lease providing that, "if a building shall be erected on the plot of ground to the south * * * of such a height as to obstruct the view of the sign of the tenant," he might cancel on 30 days' notice. Thereafter a steel sign structure was erected on a building to the south, 64 feet wide and within 75 feet of the height of the tenant's sign, and opaque advertisements were displayed from its top, so as·to substantially blanket the tenant's sign from certain points. Held, that a "building" was a fabric built or constructed, a structure, a fabric or edifice constructed for use or convenience, and that the after-erected sign was a "building," entitling the tenant to terminate the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 321–327, 337–342; Dec. Dig. § 103.*

For other definitions, see Words and Phrases, First and Second Series, Building.]

Dowling and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Mecca Realty Company against the Kellogg's Toasted Corn Flakes Company. Judgment for defendant was entered upon a verdict directed by the court (148 N. Y. Supp. 1040), and plaintiff appeals. Affirmed.

See, also, 150 N. Y. Supp. 1096.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

Charles L. Hoffman, of New York City, for appellant.

David Leventritt, of New York City, for respondent.

HOTCHKISS, J. The action is for several installments of rent at the rate of $15,000 per year; reserved in a lease of the roof of plaintiff's building, on which defendant was authorized to erect and maintain an advertising sign. Plaintiff's building was 10 stories high, and in pursuance of the lease defendant erected a roof sign about 80 feet high, the top of which was about 235 feet above the street. Plaintiff's building faces south and is bounded by Broadway, Forty-Eighth street and Seventh avenue. The block immediately to the south is of flatiron shape, and at its southerly and pointed end Broadway and Seventh avenue cross, forming a wide open space. At the time the lease was executed this block was covered by buildings only about 35 feet high, thus making of plaintiff's building a landmark for all persons coming north on Seventh avenue or Broadway, and affording to it a conspicuousness which gave to its roof great value for advertising purposes. Some time after the lease was executed, on the southern end of the building, occupying the northerly half of the flatiron and immediately in front of the plaintiff's building, there was erected a sign structure the frame of which consists of three steel trusses running

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from east to west and two running from north to south, all of which are anchored in the walls of the building, and from these extend upright columns forming a structure about 64 feet wide, the top of which is 160 feet above the street; its entire weight being about 140 tons. At the top of this structure and by means of a construction more or less opaque, advertisements are displayed. The effect is to substantially blanket the defendant's sign; the degree of obscuration depending, of course, upon the viewpoint. Prior to the erecting of this structure, the defendant's sign was plainly observable on Broadway from about Fortieth street, from which point it is now to a very large degree obstructed from view.

The rent sued for accrued after the defendant had served notice of its cancellation of plaintiff's lease, in pursuance of which notice it abandoned the demised premises. Defendant bases its right to cancel the lease upon the following clause therein:

"If at any time during the term of this lease a building shall be erected on the plot of ground to the south, located between Forty-Seventh and Forty-Eighth streets and Broadway and Seventh avenue, of such a height as to obstruct the view of the sign of the tenant as provided for herein," defendant might cancel on 30 days' notice.

[1] The determining question, therefore, is whether the sign erected to the south of plaintiff's premises constituted a "building" within the meaning of the lease. It is undoubtedly true that words used in contracts are ordinarily to be interpreted in accordance with their usual meaning, and where there is no ambiguity resort to rules of construction may not be had.

[2] But there is a broader and more comprehensive rule, the observance of which is enjoined upon us, that justice may be molded to spirit rather than to form. As was said by the Court of Appeals, writing by Martin, J., in Gillet v. Bank of America, 160 N. Y. 549, 555, 560, 55 N. E. 292, 294:

"In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation, of rules for the construction of contracts, is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties, and the objects which they had in view; and, when the intent is thus ascertained, it is to be effectuated unless forbidden by law. 'Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions, without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.'"

It is because of the enlightened rule above referred to that courts have given to the noun "building," as to other descriptive words, so elastic a construction. It is for the same reason that a literal definition of a descriptive word is of so little value, when doubt arises as to the sense in which it was used in any particular instance. As was said by Werner, J., in Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 420, 88 N. E. 747, 749 (30 L. R. A. [N. S.] 30), in which the court interpreted the word "building," or "structure," as

used in the Labor Law, to include a street car under repair in defendant's shop:

"In cases like this, lexicographers' definitions are useful as guideposts; but they do not take us to our destination. The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted."

Elsewhere the learned judge very properly says:

"A building is a structure, which, of course, includes every form of artificial house, but also many structures not included in that more restricted term."

[3] Turning to the Century Dictionary, we find "building" to have the following definitions:

"A fabric built or constructed; a structure. * * * In law, anything erected by art, and fixed upon or in the soil, composed of different pieces connected together, and designed for permanent use in the position in which it is so fixed, is a building. Thus a pole fixed in the earth is not a building, but a fence or a wall is."

As authority for its legal definition, the Century cites Edward Livingston; but I have been unable to confirm the citation.

Webster defines building as:

"A fabric or edifice constructed for use or convenience."

In Black's Law Dictionary the definition is:

"A structure or edifice erected by the hand of man, composed of natural materials, as stone or wood, and intended for use or convenience."

Bouvier's definition (Rawle's Rev.) is similar. It is in this sense I think the word was used in the lease in question.

Guided by the rule of construction to which I have referred, in Wright v. Evans, 2 Abb. Prac. (N. S.) 308, building was held to include a fence, within the meaning of a covenant not to erect a building within a certain distance of a boundary line; and in Blakemore v. Stanley, 33 N. E. 689, the Supreme Court of Massachusetts held that a "tent" violated a covenant not to erect any building other than a dwelling. Under the provisions of an act requiring that all necessary buildings must be erected by contract and let to the lowest bidder, the Supreme Court of California (Swasey v. County of Shasta, 141 Cal. 392, 394, 74 Pac. 1031, 1032), held that the act included a substantial iron fence around the county courthouse; the court in the course of its opinion saying:

"There is no well-established legal definition of the word 'building' which absolutely, and under all circumstances, either includes or excludes a 'fence.' The question greatly depends upon the connection in which the word 'building' is used, and the evident purpose of the statute or contract in which it is found."

As the clause quoted from the lease in question itself recites, the obvious and declared purpose of the parties was to allow the defendant to cancel the lease in the event that its value to defendant should be substantially destroyed by the erection on the plot to the south of any building "of such a height as to obstruct" the defendant's sign.

This result could be accomplished as well by a structure such as that as was in fact built, as it could be by an edifice which would come strictly within the meaning of the word "building," as commonly or colloquially used. It is only by ignoring the plain intent of the parties that the word can be confined to its literal meaning.

I see nothing in the case of City of New York v. Wineburgh Adv. Co., 122 App. Div. 748, 107 N. Y. Supp. 478, which in any way militates against the view I take of this case. That case involved the question whether a sky sign was embraced within the term "building or structure" as contained in the Building Code. The court held that the sign was a "structure," and in the course of his opinion Mr. Justice Scott added:

"It was equally apparent that this particular structure is not a building, within any sense of that word."

These words were perhaps not necessary for the decision, because the case did not turn upon whether the sign in question was a building. But, as I read the decision, Justice Scott's language was entirely proper, because the statute in question was directed, not only to buildings as ordinarily defined, but to all other kinds of structures, and it was therefore quite clear that the defendant's sky sign in that case was not a building within the meaning of the statute.

The judgment should be affirmed, with costs.

INGRAHAM, P. J., and LAUGHLIN, J., concur.

DOWLING, J. (dissenting). When the parties to the lease in question deliberately agreed upon its terms, it is quite plain, from the provision conferring the right to cancel the same, that they contemplated the possibility of the sign to be erected by the lessee being obscured by other mediums, which might be erected to the south thereof, and which might affect the defendant's display. A sign already existed on the building at the apex of the triangle directly to the south at Forty-Seventh street and Broadway. The frequency, height, and brilliancy of the electrical signs displayed on buildings in the vicinity of the one in question is a matter of general knowledge, and, of course, of still more complete realization, by those concerned with advertising displays.

It is apparent from the lease that the possibility of a new building being erected on a plot of land to the south was in the minds of both the parties, for the buildings then erected thereon were low and rented to temporary occupants, indicating a probable speedy improvement thereof. The owners of adjacent property had no way of preventing the erection of a building upon the plot of land to the south to whatever height the owners thereof might choose to build. Having in mind the danger of obscuration to their sign, they provided for the one contingency upon the happening of which the lessee might terminate his lease, namely, the erection of a building on the plot of land to the south of such height as to obscure the view of the signs of the lessee. Had they intended or desired to agree that the lease should be terminable in case, for any reason, including the placing of any structure

upon such southerly plot, the view of the tenant's signs should be obscured, there would have been no difficulty in finding proper words to express it.   They agreed upon the one word which has an ordinary, fixed, and accepted meaning, and that word was "building," and "this building was to be erected on the plot of land to the south."   This sky sign, if it is deemed to be a building, is a building upon a building, and as every obstruction to a view of the tenant's sign would also be a building under the interpretation sought to be given to it, the number of buildings standing in the same plot of ground could be extended indefinitely.   A strip of canvas stretched from pole to pole on the top of the building, if it interfered with the view of the tenant's sign, would also be a building under this interpretation.

If the lease was intended by both parties to confer the right upon the tenant to terminate the same if the view of its signs was obscured by anything that might be placed upon the plot to the south, then the proper remedy is the reformation of the lease.   Neither party seeks that, and to hold that the word "building" should be extended so as to include anything, even temporary in its character, which might obstruct the view of a sign upon the roof of a nearby building, is, it seems to me, doing violence to the plain meaning of the language used. The case of City of New York v. Wineburgh Advertising Co., 122 App. Div. 748, 107 N. Y. Supp. 478, had been decided by this court before the lease in question was made, and the determination of the court that a sky sign (being a sign upon a building) was a structure and not a building was sufficient notice to the parties of the construction placed upon the word "building."

The possibility of signs being erected on this southerly plot was obvious.   But that plot was then covered with old buildings, and it is evident that what the parties desired to guard against was the contingency they provided for, namely, the erection of a new high building upon this southerly plot, which would totally obscure and conceal the lessee's sign.   The word "building" was used in that connection and in that sense, and it should be construed to mean that, and nothing else. The language is unambiguous, and the court is not called upon to make a new lease for the parties.   Interpreting the word "building" in its ordinary sense, the lease conveys a clear and definite meaning, for an actual building on the southerly plot of sufficient height to obscure the tenant's sign would absolutely cut it off from view from every viewpoint.   If the word "building" means "anything on top of a building," who is to determine, in the absence of an agreement, how much obscuration is to warrant the cancellation of the lease, and what point of view shall determine the question of obscuration?   The exhibits show that, even under present conditions, the tenant's sign is not totally obscured, no matter from what angle or point the view is had.   Where parties have entered in good faith into a written contract containing clear and explicit language, the courts should do no more than enforce it, in the absence of a prayer for its reformation.

The judgment appealed from should be reversed, and judgment entered in favor of plaintiff, with costs.

McLAUGHLIN, J., concurs.