## C. K. EDDY & SONS *v.* TIERNEY.

1. ACTION—DECLARATION OF RIGHTS—PUBLIC GARAGE IN COMMERCIAL DISTRICT.

   Relief by way of bill for declaration of rights under building permit for construction in commercial district as zoned by city ordinance between lessor and lessee on the one hand and property owners objecting to construction on the other *held*, proper since there is an actual controversy and declaratory decree will end it (3 Comp. Laws 1929, § 13903 *et seq.;* Saginaw zoning ordinance).

2. APPEAL AND ERROR—PUBLIC GARAGE—MERCANTILE ESTABLISHMENT.

   Lot owner which sought and obtained a permit to erect a public garage in a commercial district construed structure to be erected and on appeal from adverse decision in proceeding for declaration of rights under permit and zoning ordinance is precluded from contending proposed structure would be a mercantile establishment subject to different treatment under the ordinance (3 Comp. Laws 1929, § 13903 *et seq.;* Saginaw zoning ordinance, §§ 1 [24], 7 [A3]).

3. MUNICIPAL CORPORATIONS — ZONING ORDINANCES — BUILDINGS — STRUCTURES—PREMISES.

   Each of series of terms "buildings, structures or premises" as found in city zoning ordinance is used disjunctively and stands independently of any other; the whole encompassing the broad field which the ordinance intended to cover (Saginaw zoning ordinance, § 7 [A]).

4. WORDS AND PHRASES—STRUCTURE DEFINED.

   Term "structure" is any production or piece of work artificially built up or composed of parts joined together in some definite manner.

5. MUNICIPAL CORPORATIONS — ZONING ORDINANCE — STRUCTURES — PUBLIC GARAGE.

   "Structure" as used in city zoning ordinance and building permit issued thereunder for erection of a public garage *held*, to include building, driveways, concrete island, gasoline tanks

and pumps, and street level storage space for automobiles, where all is so correlated as to form one harmonious entity, designed and intended to accomplish a particular purpose and constituting a permanent structure, and, since the project comes to 10 feet from street line, consent of percentage of property owners entitled to object thereto is required (Saginaw zoning ordinance, §§ 1 [24], 3 [A], 7 [A], 7 [A4b]).

6. Same — Zoning Ordinance — Consent of Property Owners — Constitutional Law.

Zoning ordinance construed as requiring consent of a percentage of property owners of frontage having right of protest against erection of public garage within commercial district where contemplated structure comes 10 feet from street line *held*, not unconstitutional as applied to building project for tire manufacturer proposing to use premises for office and display but principally for sale of tires, rubber products, batteries, lubricating oils, gasoline and automobile accessories, lubrication service and tire and battery repair service (Saginaw zoning ordinance, §§ 1 [24], 3 [A], 7 [A], 7 [A3, A4c], 14).

Appeal from Saginaw; Martin (William H.), J. Submitted April 9, 1936. (Docket No. 57, Calendar No. 38,878.) Decided June 16, 1936.

Bill by C. K. Eddy & Sons, a Michigan corporation, and Goodyear Tire & Rubber Company, Inc., a Delaware corporation, against Thomas Tierney and others for declaration of rights under zoning ordinance and building permit. From decree rendered, plaintiff C. K. Eddy & Sons appeal. Affirmed.

*George Grant* and *O'Keefe & O'Keefe,* for plaintiff C. K. Eddy & Sons.

*Picard & Heilman,* for defendants.

Toy, J. Plaintiff and appellant, C. K. Eddy & Sons, a corporation, is the owner of a lot located

on the southeast corner of Washington and Federal avenues, in the city of Saginaw, and in the hub of the business and commercial district of that city. Appellant proposes to lease this property to the plaintiff, Goodyear Tire & Rubber Company, Inc., of Akron, Ohio, and intends to erect a one and two-story brick and concrete building thereon, together with a concrete "island" containing gasoline pumps and adjoining the building proper.

The plaintiff tire company proposes to occupy and use these premises, when the construction work is completed, for office and display purposes but principally for the sale of tires, rubber products, batteries, lubricating oils, gasoline and automobile accessories, and for the rendering of a complete lubricating service upon automobiles, and a repairing service for tires and batteries of automobiles. Appellant first made application for and received a permit from the city building inspector to erect a "public garage" upon said property, within 10 feet of the street line, but objections were made, under the ordinance, by adjoining property owners and were sustained by the zoning appeal board of the city.

Later, appellant prepared and presented a new application to the building inspector, for a permit to build a "public garage," together with the plans and specifications therefor. The permit was granted.

Thereafter, the plaintiffs filed this bill, in the circuit court, in chancery, alleging the foregoing, and in addition averring that immediately after the issuance of the latter permit, the adjoining property owners, defendants herein, threatened to restrain the erection of the proposed building on the ground that it would be in violation of the zoning ordinance

of the city, and for other and divers reasons, and that the defendants threatened that if plaintiffs proceeded with the erection of said building, or the letting of contracts therefor, the said defendants would make every effort to restrain such action by injunction; that they would fight it to the limit and carry the proceedings "to the Supreme Court, if necessary."

They allege that they are desirous of settling their rights in advance of the expenditure of large sums of money for the erection of said proposed structure, and they seek a binding declaration of their rights * under their building permit and in accord with the zoning ordinance of the city of Saginaw.

Answers in denial of the bill were filed by the named defendants, excepting the Booth Publishing Company, and trial was had. At its conclusion, the learned circuit judge found and declared:

"That the proposed construction and use of plaintiff's one and two-story building, the construction of the gasoline pumps and island and their proposed use, together with the contemplated use of the entire premises, taken in their entirety and as a whole, constitute one project, and which project is within the contemplation and meaning of Section 7 A (4) of the zoning ordinance of the city of Saginaw, Michigan, and is hereby designated as and declared to be a public garage."

The decree of the court was entered in accordance therewith.

Plaintiff C. K. Eddy & Sons appeal therefrom.

The ordinance before us is entitled "zoning ordinance of the city of Saginaw," and became effective August 18, 1927.

---

* See 3 Comp. Laws 1929, § 13903 *et seq.*—REPORTER.

The provisions thereof pertinent to decision are:

"Section 1—Definitions.

"(24) Garage, Public. A space or structure, other than a private or a community garage, for the storage, care, repair or refinishing of motor vehicles, except that a structure or room used solely for the display and sale of such vehicles, in which they are not operated under their own power, and in connection with which there is no repair, maintenance or refinishing service or storage of vehicles other than those displayed, shall not be considered a public garage for the purpose of this ordinance.
\* \* \*

"Sec. 7—Commercial Districts.

"(A) Uses. In a commercial district no buildings, structures, or premises, except as otherwise provided in this ordinance, shall be erected or used for any use prohibited in an industrial or unrestricted district, or for any except one or more of the following specified purposes: \* \* \*

"(3) Mercantile establishments or professional or commercial services which are not comparable in character to any use permitted in industrial or unrestricted districts, and which are not noxious or offensive by reason of the emission of odor, fumes, dust, smoke, vibration or noise, provided that there is not in connection therewith any fabricating, manufacturing, converting, altering, finishing or assembling where mechanical power exceeding 10 rated horsepower is used, or steam pressure in excess of 15 pounds gauge pressure is produced, or where more than 15 mechanics or workers are habitually engaged on such work.

"(4) Public garages, when located:

"(a) Above or below the ground floor;

"(b) On the ground floor 30 feet or more from any street line;

"(c) On the ground floor up to 10 feet from any street line by and with the written consent of more

than 60 per cent. of owners of frontage having right of protest, or otherwise, only after public notice be given, both as provided in section (e);

"(d) On the ground floor less than said 10 feet from any street line by and with the written consent of more than 80 per cent. of owners of frontage having right of protest or otherwise, only after public notice be given, both as provided in section (e)."

(Section [e] provides for the posting upon the premises of a placard giving notice of the proposed construction and for the proceedings thereafter if protests are made.)

"Sec. 14—Interpretation; Purpose.

"In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements adopted for the promotion of the public health, safety, comfort, convenience and general welfare."

We are asked by appellant to determine whether the proposed construction is a "mercantile establishment" within the meaning of section 7 A (3) of the zoning ordinance, or a "public garage" within the meaning of Section 7 A (4) thereof; and we are requested "that if found to be a public garage the court declare whether sub. (b) or sub. (c) of (4), (of the ordinance) requiring consent of adjacent property owners, applies."

There is before us an actual controversy as to the rights of the respective parties. Our declaratory decree will end it. Therefore plaintiffs' method of seeking relief is proper. *Washington-Detroit Theatre Co.* v. *Moore*, 249 Mich. 673 (68 A. L. R. 105).

Appellant contends that the proposed construction is a "mercantile establishment" and therefore

within the meaning of section 7 A (3) of the ordinance.

But appellant did not seek nor obtain a permit to erect a "mercantile establishment," but rather one for a "public garage." The two are separate and distinct from each other. Having procured a permit to erect a public garage, we think appellant cannot here consistently contend that its proposed structure will be a "mercantile establishment." Had it desired a permit for that purpose, it should have sought it from the proper city officials and not in this forum.

Appellant having by its election construed the structure to be erected as a public garage, we will here assume that to be the fact.

This assumption, then, brings us to the next contention of appellant, namely, that the proposed structure complies with section 7 A (4) (b) of the zoning ordinance, and will be a public garage, located on the ground floor 30 feet or more from street line.

If it be so construed and declared, then appellant may proceed to the erection thereof under its present permit. If, however, it is found and declared to be a public garage, located "on the ground floor up to 10 feet from any street line" in accordance with section 7 A (4) (c) of the ordinance, then such structure may only be erected "by and with the written consent of more than 60 per cent. of owners of frontage having right of protest, or otherwise, only after public notice be given, both as provided in section (e)."

The appellees strive for this latter construction.

The practical difference between the two contentions amounts to this; that if the first construction is to be adopted, then the building proper must be

considered as an entity, in and of itself; however, if the concrete island and pumps, driveways, gasoline tanks and storage space thereon are part of the project, and constitute, when taken as a whole, the proposed "public garage," then the latter contention should be sustained.

It must be remembered that the zoning ordinance under consideration not only regulates the erection and construction of buildings, structures or premises but also controls the "uses" of such buildings, structures and premises.

Section 3 (A) of the ordinance provides:

"Except as hereinafter provided, no building, structure, or premises, or part thereof, shall be used, altered, constructed or re-constructed except in conformity with the provisions of this ordinance which apply to the district in which it is located."

Section 7, hereinbefore quoted, restricts both the *erection* and *use* of buildings, structures, or premises, except for specified purposes. That section designates as one of the exceptions a public garage, when located "on the ground floor 30 feet or more from any street line."

This section conveys the meaning that the building, or structure, or premises, enumerated therein, or any combination thereof, if to be *used* as a public garage, must, when located on the ground floor, be 30 feet or more from the street line.

The testimony indicates that the premises are to be used, in their entirety, for one purpose. That purpose has, by election of the plaintiff in obtaining its permit under the ordinance, been designated as a public garage.

In addition, while the building is proposed to be erected 30 feet from the street line, the *structure,*

which includes the concrete island, gasoline pumps and tanks and driveways, is together with the building and premises to be used in conjunction one with the other, for the purposes stated in the permit, namely: a public garage; and will extend within 10 feet of the street line.

The blue prints and specifications for this project are on file with us, and indicate a composite structure, for one general use or purpose, namely, that of a "public garage," within the definition of that term as contained in the ordinance.

The interpretation of the word "structure" as used in the ordinance under consideration is to be distinguished from the limiting definition of that term as set forth in *Healy* v. *Toles,* 266 Mich. 584 (92 A. L. R. 749). There, in the construction of our mechanics' lien statute, the principle of *ejusdem generis* was properly applied to the term "structure" following such limiting or localizing words as house, building, machinery and wharf.

But in the ordinance before us, each of the series of terms, "buildings, structures or premises," used disjunctively, stands independently of any other; the whole encompassing the broad field which the ordinance manifestly intended to reach. *Kosidowski* v. *City of Milwaukee,* 152 Wis. 223 (139 N. W. 187); *Caddy* v. *Interborough Rapid Transit Co.,* 195 N. Y. 415 (88 N. E. 747, 30 L. R. A. [N. S.] 30).

In *Mendoza* v. *Central Forest Co.,* 37 Cal. App. 289 (174 Pac. 359), the court quoted with approval the definition of "structure" as stated in 27 Am. & Eng. Enc. of Law (2d Ed.), p. 191, as follows:

"In the broadest sense a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner; any construction."

We think this definition is here applicable.

· Similar definitions of the term have been adopted by other courts. *McCormack* v. *Bertschinger,* 115 Ore. 250 (237 Pac. 363) ; *Haskell* v. *Gallagher,* 20 Ind. App. 224 (50 N. E. 485, 67 Am. St. Rep. 250) ; *City of Rock Island* v. *Industrial Commission of Illinois,* 287 Ill. 76 (122 N. E. 82) ; *Ackerman* v. *Steiner,* 7 N. J. Misc. 1056 (147 Atl. 746) ; *Armenti* v. *Brooklyn Union Gas Co.,* 157 App. Div. 276 (142 N. Y. Supp. 420) ; *City of New York* v. *M. Wineburg Advertising Co.,* 122 App. Div. 748 (107 N. Y. Supp. 478) ; *State, ex rel. West Virginia Sand & Gravel Co.,* v. *Royal Indemnity Co.,* 99 W. Va. 277 (128 S. E. 439, 43 A. L. R. 552) ; *Clement* v. *Putnam,* 68 Vt. 285 (35 Atl. 181) ; *Le Croy* v. *Barney* (C. C. A.), 12 Fed. (2d) 363.

In *Andrew B. Hendryx Co.* v. *City of New Haven,* 104 Conn. 632 (134 Atl. 77), we find a case where the court construed a "building code" ordinance, which provided that "the erection, construction or alteration of said building, structure or any part thereof * * * shall not be commenced." There the court collected and cited several authorities which define the term in its broadest sense, and said:

"There are numerous other instances in the authorities where structure has been used in this wide sense. We think it was so used in this ordinance. * * * If structure as used in connection with building meant an independent building, as we understand the plaintiff to claim, the purpose of the building code of New Haven would be largely defeated."

A reference to the definition of "public garage" contained in the ordinance and hereinbefore set forth, shows that it contemplates and includes not only a "structure" but a "space," for "the storage, *care, repair* or *refinishing* of motor vehicles."

The proposed tenant plans to use not only the building and the structure for these purposes, but also the "space" of said premises.

The building project here contemplated is a finished piece of work, composed of integral parts, and when completed, will consist of a building, driveways, concrete island, gasoline tanks, gasoline pumps, and street level storage space for automobiles, all of them so correlated as to form one harmonious entity, designed and intended to accomplish a particular purpose, and constituting a permanent structure to be used as a public garage.

This proposed use, we think, brings the composite structure within section 7 A (4) (c) of the ordinance, and excludes it from the provisions of section 7 A (4) (b) thereof.

Appellant contends that if we construe the effect of the ordinance as we have herein indicated, that the ordinance is then unconstitutional, and it cites to us *City of Pleasant Ridge* v. *Cooper,* 267 Mich. 603. A study of that case will show it to be clearly distinguishable from the case at bar. No similar factual situation is before us. We think appellant's contention without merit. *Dawley* v. *Ingham Circuit Judge,* 242 Mich. 247; *City of Lansing* v. *Dawley,* 247 Mich. 394; *City of North Muskegon* v. *Miller,* 249 Mich. 52; *James S. Holden Co.* v. *Connor,* 257 Mich. 580; *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 (47 Sup. Ct. 114, 54 A. L. R. 1016).

The decree of the circuit court in chancery is affirmed, with costs to appellees.

North, C. J., and Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Potter, J., took no part in this decision.